## BETTY P. BOWMAN, ET AL.

## V.

## STATE BANK OF KEYSVILLE, ET AL.

Record No. 820901

Decided June 14, 1985, at Richmond

Present: All the Justices

*John S. Graham, III (Caroline Lowdon Lockerby; Browder, Russell, Morris & Butcher*, on briefs), for appellants.

*Wm. Rosenberger, Jr.; Jay T. Swett (McGuire, Woods & Battle*, on briefs), for appellees.

COMPTON, J., delivered the opinion of the Court.

Virginia adheres to the common-law rule that when a contract calls for the rendition of services, but the period of its intended duration cannot be determined by a fair inference from its provisions, either party is ordinarily at liberty to terminate the contract at will upon giving reasonable notice of intention to terminate. *Stonega Coal and Coke Co.* v. *Louisville and Nashville R. R. Co.*, 106 Va. 223, 226, 55 S.E. 551, 552 (1906). This appeal

presents a unique situation under the foregoing employment-at-will doctrine.

We have consolidated for review two damage suits brought by separate employees of a state bank who were also stockholders of the bank corporation. We awarded the plaintiffs appeals from orders entered in February 1982, in which the trial court sustained defendants' demurrers to virtually identical motions for judgment.

A demurrer admits the truth of all material facts that are properly pleaded. Under this rule, the facts admitted are: "(1) facts expressly alleged, (2) facts which are by fair intendment impliedly alleged, and (3) facts which may be fairly and justly inferred from the facts alleged." *Ames* v. *American National Bank*, 163 Va. 1, 37, 176 S.E. 204, 215 (1934) (footnote omitted). We shall recite the facts in accordance with those principles.

Plaintiffs Betty P. Bowman and Joyce T. Bridges sued the State Bank of Keysville as well as Reginald H. Pettus, William C. Ward, S. H. Brookes, John F. Lyle, Thomas S. McKenzie, Jr., Daniel G. Van Clief, and Ralph J. Davis, individually. Plaintiff Bowman had been employed by the Bank in various positions for eight years until her termination on July 13, 1979. At that time, she was a bookkeeper for the Bank. Plaintiff Bridges was terminated on the same day and had been in the Bank's employ for 18 years. She was head bookkeeper for the Bank when terminated. At all times pertinent to this controversy, plaintiff Bowman and plaintiff Bridges owned five and six shares, respectively, of the Bank's common stock.

The individual defendants, except defendant Davis, were members of the Bank's nine-person Board of Directors at times pertinent to this litigation. Pettus was chairman of the Board as well as the Bank's attorney. Ward was president of the Bank. Davis was a vice president of NB Corporation.

Prior to February 8, 1979, the Bank's management commenced negotiations with officials of NB which culminated in the execution of an agreement providing for merger of the Bank into a subsidiary of NB and conversion of each share of common stock of the Bank into 25 shares of common stock of NB. A special meeting of shareholders was scheduled for June 26, 1979. The Board had a proxy statement prepared and mailed to each stockholder of record. The plaintiffs alleged that the proxy statement was false and misleading, in violation of federal securities laws and laws of the Commonwealth. The plaintiffs also alleged that the Bank,

through its Board and management, solicited proxies in a manner that violated state and federal securities laws. The plaintiffs assert that defendant Davis participated in the foregoing illegal activity.

The defendants knew there was opposition to the merger and that the vote of stockholders on the merger would be extremely close. Several days before the special meeting, plaintiff Bowman was informed by Ward, in the presence of Davis, that Davis and the members of the Board were aware of her opposition to the merger. Bowman was told that if her shares were not voted in favor of the merger and the merger was not consummated her employment with the Bank would be terminated. She was also advised at the time that if the merger was approved, but her shares were not voted in favor of the merger, her vote against the merger would have "a definite adverse effect on her job."

Shortly before the date of the special meeting, plaintiff Bridges was given essentially the same information by Ward, in the presence of Davis, that was conveyed to Bowman. Bridges was told that if she refused to vote for the merger she would not continue to be employed by the Bank, if the merger failed, or by the resultant entity, if the merger were consummated.

The plaintiffs executed their proxy cards in favor of the merger against their will, under duress, and out of fear of losing their jobs. At the special meeting, 2008 shares of the Bank's common stock, including the plaintiffs' 11 shares, were voted in favor of the merger proposal. This was eight votes more than the number necessary to constitute the required two-thirds majority for approval of the plan.

Two days after the special meeting, the plaintiffs wrote a joint letter to the Bank president. They stated that their proxies were invalid, illegally obtained, "improper and null and void." Accordingly, they wrote, only 1997 votes were cast in favor of the merger, less than the votes necessary for approval.

On July 6, 1979, the Bank Board voted to abandon the merger. The merger was aborted, according to the plaintiffs' allegations, because the defendants feared that the illegal activities involved in obtaining the proxies of stockholders, including the plaintiffs, would be discovered. Six days later, the Board, by a five to four vote, decided to discharge the plaintiffs from their employment with the Bank. Directors Pettus, Brookes, Lyle, McKenzie, and Van Clief voted for termination while Ward voted against discharge.

On July 13, plaintiff Bowman was summoned to Ward's office. Pettus informed her of the Board's action and notified her that her employment was terminated. On the same day, Pettus called plaintiff Bridges by telephone, gave her the same information, and terminated her employment. These suits were filed five months later.

In their respective motions for judgment, the plaintiffs seek compensatory and punitive damages. In one count, the plaintiffs seek recovery against the Bank and the named directors for improper discharge from employment. In another count, the plaintiffs seek damages against the named Board members and defendant Davis for tortious interference with contractual relations.

On appeal, defendants assert that the trial court properly sustained the demurrers. The Bank and defendant directors, relying on the employment-at-will doctrine, assert that a contract of employment for an indefinite period is terminable at any time, after reasonable notice, by either party for any reason or no reason at all. These defendants contend that there is nothing in the contracts of employment from which an inference can be drawn that the plaintiffs were employed for a definite period of time. According to the argument, the employees agreed to furnish services as bookkeepers for a certain sum of money, not for a definite time, and the employer agreed to pay for the performance of the services, but not for a definite time. In addition, these defendants say that if any change is to be made in the common-law doctrine of employment-at-will to cover the facts of these cases, the change should be made by the General Assembly and not this Court. They point to exceptions to the doctrine already provided by the legislature for employees who are physically handicapped, Code § 40.1-28.7, employees who file safety or health complaints, Code § 40.1-51.2:1, and employees who exercise rights under the Workers' Compensation Act, Code § 65.1-40.1.

The plaintiffs, contending the trial court erred in sustaining the demurrers, say they recognize the force and validity of the employment-at-will doctrine in Virginia. Accordingly, they assert, they did not seek reinstatement in their positions with the Bank. Nevertheless, they argue, the employment-at-will rule has exceptions which temper its harsh application, and they urge the Court to invoke one of those exceptions in these suits for damages.

The plaintiffs note that it is not contested, for purposes of this proceeding, that they were performing their jobs in a satisfac-

tory and capable manner. They point out that the reasons for their discharges had nothing to do with their job performance or their status as employees. The plaintiffs note their discharges were premised solely upon the proper exercise of their protected rights as shareholders. Thus, the plaintiffs assert, the question for decision is not whether the employment-at-will doctrine as it exists in Virginia should be altered, but whether this employer can, with absolute immunity, discharge these employees in retaliation for the proper exercise of rights as stockholders, a reason which has nothing to do with the employees' job performances. In sum, the plaintiffs assert that the Bank and the named Board members, by actions which violated securities and corporation laws, sought to influence the exercise of protected shareholder rights by bringing pressure to bear on the vulnerable employee relationship, and that the employment-at-will rule does not protect the defendants from such conduct. We agree.

Virginia has not deviated from the common-law doctrine of employment-at-will set forth in the *Stonega Coal* case, *supra. See, e.g., Wards Co.* v. *Lewis & Dobrow, Inc.*, 210 Va. 751, 756, 173 S.E.2d 861, 865 (1970); *Plaskitt* v. *Black Diamond Trailer Co.*, 209 Va. 460, 164 S.E.2d 645 (1968); *Title Ins. Co.* v. *Howell*, 158 Va. 713, 718, 164 S.E. 387, 389 (1932).* And we do not alter the traditional rule today. Nonetheless, the rule is not absolute. The unique facts of these cases require us to apply one of the recognized exceptions to the rule of terminability.

The courts of at least 20 states have granted exceptions to the strict application of the doctrine in favor of at-will employees who claim to have been discharged in violation of an established public policy. *See, e.g., Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980) (at-will employee fired in retaliation for his insistence that his employer comply with state laws relating to

---

* The development and modern status of the employment-at-will doctrine is discussed in: Murg & Scharman, *Employment At Will*, 23 B.C.L.Rev. 329 (1982); Note, *Public Policy Limitations on the Retaliatory Discharge of At Will Employees in the Private Sector*, 14 U.C.D.L.Rev. 811 (1981); Comment, *Guidelines for a Public Policy Exception to the Employment At Will Rule: The Wrongful Discharge Tort*, 13 Conn.L.Rev. 617 (1981); Annot., *Modern Status of Rule That Employer May Discharge At-Will Employee for Any Reason*, 12 A.L.R.4th 544 (1982); Annot., *Liability for Discharging At-Will Employee for Refusing to Participate in, or for Disclosing, Unlawful or Unethical Acts of Employer or Coemployees*, 9 A.L.R.4th 329 (1981); Annot., *Right of Corporation to Discharge Employee Who Asserts Rights as Stockholder*, 84 A.L.R.3d 1107 (1978); Special Report (BNA), *The Employment-At-Will Issue* (1982).

food labelling); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1979) (employee fired for refusing employer's request to ask for excuse from jury duty); *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985) (employee discharged for refusal to perform an illegal act); *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270 (W.Va. 1978) (bank employee discharged in retaliation for his efforts to require employer to comply with state and federal consumer credit protection laws).

In the present cases, the retaliatory discharges were based on violations of public policy by the defendants. Code § 13.1-32 conferred on these plaintiffs as stockholders the right to one vote, for each outstanding share of stock held, on each corporate matter submitted to a vote at a meeting of stockholders. This statutory provision contemplates that the right to vote shall be exercised free of duress and intimidation imposed on individual stockholders by corporate management. In order for the goal of the statute to be realized and the public policy fulfilled, the shareholder must be able to exercise this right without fear of reprisal from corporate management which happens also to be the employer. Because the right conferred by statute is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation.

Consequently, applying a narrow exception to the employment-at-will rule, we hold that the plaintiffs have stated a cause of action in tort against the Bank and the named directors for improper discharge from employment.

In the second count of their motions for judgment, the plaintiffs alleged that the defendants, other than the Bank, engaged in conduct which "constituted a conspiracy to interfere with the Plaintiff's contractual relations with the Bank," and that such interference constituted a proximate cause of their discharges and alleged damages. On brief, the plaintiffs specifically assert tortious interference with their respective employment contracts, as opposed to interference with any of their contractual rights as shareholders. We conclude the trial court correctly sustained the demurrers to these claims.

In Virginia, an action in tort lies against those who conspire to induce the breach of a contract. *Worrie v. Boze*, 198 Va. 533, 540, 95 S.E.2d 192, 198 (1956). The plaintiff must establish

that there was a conspiracy to procure the breach of contract and that pursuant to such conspiracy the contract was breached. *Id.* at 541-42, 95 S.E.2d at 199. Of course, there must be two persons to comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself. *Nelson Radio & Supply Co.* v. *Motorola,* 200 F.2d 911, 914 (5th Cir. 1952); *Griffith* v. *Electrolux Corp.,* 454 F.Supp. 29, 32 (E.D. Va. 1978). *See Cote* v. *Burroughs Wellcome Co.,* 558 F.Supp. 883, 889 (E.D. Pa. 1982) (applying Virginia law). Thus, a third party is necessary to create an actionable conspiracy to induce a breach of contract.

██ The plaintiffs claim that Davis was the third party here. Articulating on brief the basis of their conspiracy claims, the plaintiffs say that they "alleged in their Motions for Judgment that the actions of the Officials and of Davis in instructing them how to vote their shares and in discharging or sanctioning their discharge from employment constituted a tortious interference with their contractual relations with the bank." This, of course, is a contention that the conspiring parties were (1) the "Officials" as a group, acting for the corporation and not acting individually, and (2) Davis. Further on brief, the plaintiffs argue that "the actions of the Officials and of Davis in inducing the bank to discharge the Employees were illegal and tortious," and that they sufficiently alleged a conspiracy to procure the breach of their employment contracts. We disagree.

██ The plaintiffs' motions for judgment are devoid of any factual allegations to support the idea that Davis induced the group of directors, "the Officials," to terminate the plaintiffs' employment. The conspiracy theory is asserted in mere conclusory language and the argument in support of the theory is based on inferences that are not fairly and justly drawn from the facts alleged. The plaintiffs assert that Davis and Ward threatened the plaintiffs several days before the June 26 special meeting. The plaintiffs also allege that Davis was present at the July 12 directors meeting when the decision was made to fire plaintiffs. Yet, Ward voted against discharging the plaintiffs and there is no allegation that Davis met or talked with any of the five directors who voted to terminate the plaintiffs. In sum, the allegations are insufficient to conclude that Davis was the third party necessary to form a conspiracy with the group of directors, the "Officials," or that any such conspiracy resulted in the breach of the plaintiffs' employment contracts with the Bank.

Accordingly, the decision of the trial court will be affirmed, in part, and reversed, in part. The cases will be remanded for further proceedings against the Bank and the named bank directors on the first count of the motions for judgment. Final judgment will be entered here in favor of Davis in each case.

*Affirmed, in part, reversed, in part, and remanded.*

POFF, J., concurring in part and dissenting in part.

I endorse the majority's decision to adopt and apply an exception to the rule governing contracts of employment at will. I disagree with the holding that the plaintiffs failed to state a cause of action under the conspiracy count of their motions for judgment.

The majority acknowledges that "an action in tort lies against those who conspire to induce the breach of a contract" when the object of the conspiracy is achieved. The majority then concludes that it takes two to conspire, that a corporation "cannot conspire with itself", that the plaintiffs' pleadings "are devoid of any factual allegations to support the idea that Davis induced the group of directors, 'the Officials,' to terminate the plaintiffs' employment", and, hence, that the conspiracy count fails to state a cause of action.

This rationale is flawed, I believe, because it treats the five directors as a single party litigant, an indivisible unit existing only as the alter ego of a corporation. It is true, of course, that when the five directors voted to discharge the plaintiffs, they were performing a corporate function. But this "improper discharge from employment", an intentional tort, was alleged to be the product of a conspiracy "to induce the breach of a contract", and such a conspiracy is actionable as a tort, separate and distinct from the improper-discharge tort.

When this Court reviews a ruling on a demurrer, we analyze the sufficiency of the plaintiff's pleading. Here, the plaintiffs alleged that "[t]he activity of the Defendants and each of them, other than the Bank . . . constituted a conspiracy to interfere with the Plaintiff's contractual relations with the Bank." In the conspiracy count, the plaintiffs named neither the corporation nor its board of directors as a party defendant, but only the five directors who voted to terminate their employment and two other individuals.

As I read their allegation, the plaintiffs charged these defendants with the discrete tort of conspiring among themselves to cause the Bank to terminate their contracts of employment. It may be that the plaintiffs are unable to prove what they allege against one or more of the seven individual defendants. But we are asked to decide only whether their allegation is sufficient to survive a demurrer.

I believe it is, and I would reverse the judgments and remand the cases for a trial on the merits of both counts.