## CIRCUIT COURT OF FREDERICK COUNTY

Kerns

    v.

Shirley Well Drilling

February 13, 1986

Case No. (Chancery) C-85-1

By JUDGE ROBERT K. WOLTZ

The issue resulting from trial of this action is whether the complainant Kerns is entitled to certain relief against his former employer, the defendant, for discharge from employment in contravention of Section 65.1-40.1, namely discharge because Kerns filed a worker's compensation claim as the result of a work-related injury.

Commencing in 1973, Kerns was employed off and on by Shirley on a "pump crew." A pump crew generally consists of one man plus a helper and principally is engaged in on-site installation and repairs of water pumps in areas not supplied by a municipal or central water system. Up until the end of his last employment in April of 1984, Kerns had been employed by the defendant, whose owner was first cousin to Kerns's wife, on three or four occasions of varying length. Kerns was never fired from his job, always quitting voluntarily but without notice. When he worked, he did his work well. On two or possibly three occasions at indefinite times in the past, he had received job-related injuries and worker's compensation benefits as a result.

In April, 1984, Kerns received a job-related injury to his knee, was off duty for a short while, returned to work for a few days but, due to the injury, could no

longer continue and had surgery on the knee. The employer probably would have taken him back in the earlier part of this disability if that had been possible. Kerns filed for and received worker's compensation benefits. In November, 1984, near the first anniversary of his having been again employed by Shirley, Kerns's physician cleared him for return to work. He testified he promptly called Shirley requesting re-employment, but the latter said he did not want him back because "You cost me too much insurance money." This was corroborated by testimony of Kerns's wife, who said that she only heard her husband saying he would report for work the next day, Monday, followed by Shirley's statement, when she picked up an extension phone in their mobile home. No other evidence as to the presence or absence of an extension telephone was introduced. Shirley denies making that statement, saying that when Kerns called, he reported he was unable to return to light duty. Shirley then said there was no such thing as light duty as any job could always involve heavy duty and that he was not taking Kerns back because of his past employment record over the years.

Uncontroverted abstracted records of the employee's work record from 1973 to his April, 1984, injury were introduced. They show that during the periods when he was employed by Shirley, he rather consistently missed a number of days from work. These do not disclose whether the days missed were due to injury, illness, bad weather, or other cause. As an example, the employment record shows that for the thirteen-week period from December 30, 1983, to March 30, 1984, Kerns was absent a total of eighteen work days or approximately 1.4 days per week. Other samplings of the work records show a similar rate of absenteeism. Shirley testified he always had work available for his men, usually wanted them to work longer than the standard work week and that when his customers had pump problems, they demanded prompt service.

He also testified that Kerns was frequently late in reporting for work, which caused morale problems among other employees, that Kerns never gave notice he would be absent on any day, which was not denied and to some extent confirmed by Kerns's own testimony, and that the absence of a crew chief caused difficulty in finding other work for the helper. This last job-related injury of the

employee caused him to be unavailable for work longer than any of his previous injuries. Both parties testified that Shirley had never fired Kerns for his lateness or absenteeism but that Shirley had "gotten on him" a number of times for these. Shirley noted that he had taken the complainant back after previous job-related injuries but supposed that during the interim of this one, he thought about the complainant's shortcomings as an employee and decided he was "fed up" with him.

The contract of employment between Kerns and Shirley was clearly one at will, no specific time being fixed for the duration of the employment. *Smith v. Arthur H. Fulton, Inc.*, Circuit Court of Frederick County, law No. 4333 (1984). As stated in *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985):

> Virginia adheres to the common-law rule that when a contract calls for the rendition of services, but the period of its intended duration cannot be determined by a fair inference from its provisions, either party is ordinarily at liberty to terminate the contract at will upon giving reasonable notice of intention to terminate. [Citations omitted.]

This right of termination by either party seems to be based on the concept of mutuality. *Smith, supra.* The rule is not absolute, however, and several exceptions to the right of the employer to terminate employment under a contract at will on public policy grounds have developed. *Bowman* establishes one exception where the termination of employment by the employer was attributable to its invasion of an employee-stockholder's free exercise of her rights as a stockholder. That case also points out statutory exceptions relating to discharge of the physically handicapped, Section 40.1-28.7; discharge for filing safety or health complaints, Section 40.1-51.2:1; and the statute here involved, exercise of employee rights under worker's compensation, Section 65.1-40.1. Though no civil sanctions are provided, a related instance is

discharging or penalizing an employee because of jury service, which is made a misdemeanor, Section 18.2-465.1.

The portion of Section 65.1-40.1 pertinent to the present case follows:

> No employer or person shall discharge an employee solely because the employee (i) has incurred a work-related injury for which he intends to file or has filed a claim under this Act.
>
> The court shall have jurisdiction, for cause shown, to restrain violations and order appropriate relief, including actual damages and attorney's fees to successful claimants and the rehiring or reinstatement of the employee, with back pay plus interest at an annual rate not to exceed eight percent.

Kerns seeks back pay and benefits from the date of termination of his employment and attorney's fees, but not reinstatement or interest.

This case involves two things: First, in a blending of the difficult fields of statutory construction and causation, the meaning of the word "solely"; and second, the burden of proof.

The employer asserts that "solely" is used as an absolute and the employee interprets it to mean the "effective cause" of terminating the employment. Though the statute provides for equitable relief as well as money damages, its gravamen is essentially founded in tort. The tort is the statutorily created wrongful discharge with a highly peculiar mixture of statutory sanctions against it. Rather than engaging in extensive semantics, the action being for a tort, though an intentional one, solving the difficulty by reference to another area of torts in which causation is prime seems appropriate. In negligence law, a proximate cause is one which produces the result, i.e., an "accident, injury, or damage. It is a cause without which the accident, injury, or damage would not have occurred." Virginia Model Jury Instructions, Instruction No. 5.000. The statute says "solely." The complainant therefore must show that his filing of his claim under the Worker's Compensation Act for his work-related injury was the sole proximate cause of his dis-

charge. Under familiar principles, the complainant would have the burden of proving this by the greater weight of the evidence.

In light of this burden and on review of the evidence, it is the Court's opinion that the complainant has not proven he was discharged from employment solely because he filed a claim for compensation benefits for his work-related injury.