## CIRCUIT COURT OF WASHINGTON COUNTY

Roger Lee Meade

    v.

Appalachian Power Co.

April 5, 1988

Case No. (Law) 3899

By JUDGE CHARLES H. SMITH, JR.

The plaintiff herein, Roger Lee Meade, has filed suit against the defendant, Appalachian Power Company, for wrongful discharge from employment. In his initial motion for judgment, the plaintiff sought recovery on two counts, wrongful discharge and defamation. The defendant demurred to this pleading and, at the first hearing, October 23, 1987, the court, after reviewing authorities cited and hearing argument of counsel, sustained the demurrer. The plaintiff was given twenty-one days within which to file an amended motion for judgment and did so file on November 12, 1987. The amended motion for judgment contains three counts: count one alleging wrongful termination of employment for failure to follow company policy relating to investigation of energy theft; count two alleging wrongful discharge in violation of an implied unilateral contract terminable only for cause; and count three alleging unlawful discharge in violation of public policy. The defendant has again demurred to the plaintiff's amended motion for judgment and has submitted authorities in support of its position.

The undisputed facts are that the plaintiff was apparently an employee in good standing of the defendant on August 5, 1986. At the commencement of his employment, the plaintiff had apparently received from the defendant a copy of its handbook dated November of 1985 which sets forth in detail the official policies and procedures of the defendant company. The official policy of the defendant, as stated in its handbook, was to prefer criminal charges against any person suspected of the theft of electrical power or tampering with a metering device. The plaintiff was a customer of as well as an employee of the defendant. On the 8th of August, 1986, the plaintiff was informed by a meter reader for defendant that plaintiff's electrical meter had been found in an inverted position when the monthly meter reading was taken. The employee handbook, at page 35, provides that the theft of energy is a very serious matter and that the normal discipline for employee theft of energy shall be discharged for the first offense. The plaintiff was permanently discharged from his employment by the defendant on August 12, 1986, for the unlawful use of electrical energy. The plaintiff contends that he requested that criminal charges be preferred against him but that no action was ever taken in this regard.

The issues presented are (1) Was the plaintiff wrongfully terminated by defendant's failure to follow company policy relating to investigations of energy theft? (2) Was the plaintiff wrongfully discharged in violation of an implied unilateral contract terminable only for cause? (3) Was the plaintiff unlawfully discharged in violation of public policy?

The court, at the conclusion of the last hearing, having considered counsel's arguments and defendant's brief, indicated its intention to sustain the defendant's demurrer to the amended motion for judgment. Having now had the opportunity to thoroughly review the authorities cited, I am satisfied that the law on these issues is as outlined in the brief filed by the defendant and I find no reason to alter the court's position. I will briefly outline the court's reasons.

*I. Was the plaintiff wrongfully terminated by defendant's failure to follow company policy relating to investigations of energy theft? Was the plaintiff wrongfully discharged*

*in violation of an implied unilateral contract terminable only for cause?*

The court will consider these two counts together since a resolution of the two depends upon an interpretation of the defendant's company handbook. As stated above, the defendant issued to the plaintiff, as it apparently does to all of its employees, a copy of its employee handbook at the commencement of his employment. The plaintiff contends that the various policies and procedures outlined in this handbook (such as those dealing with job advancement, probation and permanent employees, promotions, discipline, grievance and arbitration, etc.) provided added inducement and consideration for him to accept the employment offer of and continue employment with the defendant company and created an implied unilateral contract, terminable only for cause.

In Virginia, the law is clear that where no specific time is fixed for the duration of the employment, there is a rebuttable presumption that the hiring is terminable at will. This principle was reiterated by the Virginia Supreme Court in the recent case of *Miller v. SEVAMP, Inc.*, 234 Va. 462 (1987). The facts of that case, as pertinent here, were as follows.

The plaintiff was employed by the defendant. At the time of her employment, the acting executive director of the defendant informed her that she would have the job as long as there "continued to be adequate federal funding of the RSVP." The plaintiff subsequently appeared as a witness for another employee before a grievance review panel. Two weeks later, her employment was terminated. The defendant had a personnel manual that stated it was the policy of the organization to retain conscientious and loyal workers but to dismiss those who were guilty of serious rule infractions. Further, the manual stated that an employee could be dismissed at the discretion of the executive director. The plaintiff filed a two-count motion for judgment alleging that the defendant had breached her contract of employment and that the action was malicious, wrongful and tortious and done in retaliation for her appearance as a witness for another employee. The defendant demurred and the court sustained the demurrer as to both counts. The Supreme Court stated as follows:

> Virginia adheres to the common law rule that when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party reasonable notice.
>
> An employee is ordinarily at liberty to leave his employment for any reason or for no reason, upon giving reasonable notice, without incurring liability to his employer. Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer.

The Supreme Court noted that where no specific time is fixed for the duration of the employment, there is a rebuttable presumption that the hiring is terminable at will. The Supreme Court further stated:

> Nevertheless, a pleading seeking to recover damages for the termination of a contract of employment, the terms of which give rise to no fair inference of a specific period for its intended duration, and which is not supported by any substantial additional consideration taking it out of the category of an employment at will, is demurrable.

As to the issue of retaliatory discharge, the Supreme Court stated:

> *Bowman* applied a narrow exception to the employment-at-will rule but it fell far short of recognizing a generalized cause of action for the tort of retaliatory discharge. *Bowman* recognized an exception to the employment-at-will doctrine limited to the discharges which violate public policy, that is the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general. The exception

we recognize was not so broad as to make actionable those discharges of at-will employees which violate only private rights or interests. (The Supreme Court is talking about the case of *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

As contended in plaintiff's amended motion for judgment and, in fact, conceded in defendant's brief, the employment-at-will doctrine is not absolute. It is also the law that job security representations (e.g. that employees are terminable only for cause) as contained in an employer's publication of a handbook can create a contractual offer of employment upon such terms, which the employee accepts by his continued service. While there is no Virginia Supreme Court on point, the defendant has pointed out that this theory has been adopted by the United States District Court for the Western District of Virginia. (*See Barger v. General Electric Company*, 599 F. Supp. 1154 (W.D. Va. 1984), and *Thompson v. American Motor Inns*, 623 F. Supp. 409 (W.D. Va. 1985).) However, the court in *Thompson v. American Motor Inns* qualified its holding stating:

> If the employer, for whatever reason, does not want the manual to be capable of being construed by the court as a binding contract, there were simple ways to attain that goal. All that need be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual . . .

The defendant's handbook in question contained just such a disclaimer. In the "Introduction" section of the handbook it is stated as follows:

> The policies set forth in this handbook or in any supplement to it are not to be regarded as creating between the company and its employees a contract of employment either express or implied.

This court finds and holds, as have other Virginia circuit courts that have dealt with this subject, that such employee

handbooks containing such disclaimers cannot, as a matter of law, support a breach of contract claim. In order for that to be a contract, there must, of course, be a "meeting of the minds." In the instant case, the prominent display of this statement in the handbook in very clear and unambiguous terms firmly renounces its intent to form a contract with any of its employees affected thereby.

There is yet another reason why the court cannot sustain the plaintiff's position with regard to his implied unilateral contract claim. Even assuming the existence of a binding contract, despite the disclaimer to the contrary, the plaintiff is still precluded from recovery on these pleadings by the specific terms of the very document upon which he relies. Page 24 of the defendant's employee handbook contains a comprehensive grievance and arbitration procedure. Pursuant to this procedure, an employee who is not satisfied with the results of his grievance procedure may notify the company of his intent to have the matter arbitrated. The procedure further provides for the joint selection of an arbitrator before whom a hearing shall be conducted. The arbitrator is required to file a written decision "which shall be final and binding on both parties."

Virginia has adopted legislation dealing with the subject of "Arbitration and Award." Section 8.01-577(B) of the Code provides as follows:

> Neither party shall have the right to revoke an agreement to arbitrate except on a ground which would be good for revoking or annulling other agreements. Submission of any claim or controversy to arbitration pursuant to such agreement shall be a condition precedent to institution of suit or action thereon, and the agreement to arbitrate shall be enforceable, unless the agreement also provides that submission to arbitration shall not be a condition precedent to suit or action.

Section 8.01-581.01 further provides as follows:

> A written agreement to submit any existing controversy to arbitration or a provision in

> a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract. This article also applies to arbitration agreements between employers and employees or between their respective representatives unless otherwise provided in the agreement.

If, as plaintiff claims, the defendant's employee handbook created an implied unilateral contract of employment, and, if plaintiff was wrongfully discharged in violation of the terms thereof, then the plaintiff was required to pursue the grievance and arbitration procedures provided by the terms of the agreement upon which he relies before instituting this suit since there is no indication "that submission to arbitration shall not be a condition precedent to suit or action." The plaintiff cannot expect the court to sustain a position that would allow him to embrace those provisions of the alleged agreement which tend to support his claim while ignoring those that are in obvious conflict therewith.

Nor is the court concerned that the arbitration provision of the handbook is couched in permissive rather than mandatory language. The obvious intent was to provide for arbitration as the final step in resolving these disputes and to avoid expensive, time-consuming litigation. The plaintiff had the choice, after exhausting the company's in-house grievance procedure, to either request arbitration or abandon his claim.

II. *Was the plaintiff unlawfully discharged in violation of public policy?*

There is a long line of cases in Virginia and elsewhere that stand for the proposition that employers must not discharge employees for reasons which violate public policy. These are generally referred to as "retaliatory discharges" and the courts have been quick to recognize them and to grant redress by way of reinstatement and/or damages. (For specific example, see the cases of *Bowman*

*v. State Bank of Keysville,* 229 Va. 534 (1985), and *Miller v. SEVAMP, supra.*)

The plaintiff has presented a most unique and innovative proposition on this issue. The plaintiff contends that he was discharged for alleged theft of electrical energy; that section 18.2-163 of the Code makes the theft of electrical energy a crime; that this creates a public policy of the Commonwealth; that he was discharged by the defendant for violating this public policy; and that, therefore, this was tantamount to a "for cause" termination thereby taking him out of the common law "at-will" presumption and making him an employee terminable only for just cause. A circuitous bit of reasoning, to be sure, but innovative nevertheless.

The fallacy of this position is that, while many, indeed most, terminations may very well be for just cause, there is no requirement that the same exist as a prerequisite to the termination of at-will employees. A termination for cause does not retroactively make an at-will employee a contract employee. The defendant might legally have terminated the plaintiff for any reason or no reason. The fact that it had just cause is incidental.

The statute does, indeed, indicate a public policy of the Commonwealth. However, it is the plaintiff, not the defendant, that allegedly violated this public policy. To suggest that a flaw in the procedure employed by the defendant in terminating the plaintiff somehow offended this public policy thereby rendering the discharge unlawful, is interesting but without merit.

I am, therefore, of the opinion that the demurrer should be sustained and that the action should be dismissed with prejudice.