896 F.2d 547
 114 Lab.Cas. P 56,185
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert L. SULLIVAN, Jr., Plaintiff-Appellant,
v.
SNAP-ON TOOLS CORPORATION, Defendant-Appellee.
 No. 89-2065.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 1, 1989.
Decided: Jan. 26, 1990.
 
 1
 Jay Joseph Levit (Levit & Mann, on brief), for appellant.
 
 
 2
 Edward Milton Farley, III (Joseph D. McCluskey, Robert J. Stoney, Hunton & Williams, on brief), for appellee.
 
 
 3
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and JAMES C. FOX, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 
 JAMES C. FOX, District Judge:
 
 4
 Robert L. Sullivan ("Sullivan") brought the instant suit seeking damages from defendant Snap-on Tools Corporation ("Snap-on") for an alleged breach of his employment contract with the corporation, to wit, termination of his employment without just cause therefor. Snap-on moved for summary judgment in the district court on the grounds that Sullivan's employment contract with Snap-on did not contain a "just cause" provision which would alter Snap-on's right to terminate, at will, Sullivan's employment. The district court concluded that Sullivan's employment was in the latter category and granted Snap-on's motion for summary judgment. For the reasons set forth below, we affirm.
 
 
 5
 Sullivan first became associated with Snap-on in 1976 as an independent dealer in its products. In 1979 Sullivan relinquished his dealership and accepted a position with Snap-on as a field manager. In October 1983 Snap-on promoted Sullivan to the position of sales manager and transferred him to the Richmond, Virginia, branch office. Snap-on relieved Sullivan of his duties on May 15, 1987. The corporation subsequently offered Sullivan a field manager position at another branch but he rejected the offer because he considered it a demotion.
 
 
 6
 At no time did Sullivan have an express, written contract of employment for any fixed duration with Snap-on. Sullivan was signatory only to two writings with Snap-on, to wit, sometime between 1979 and 1983 Sullivan signed a "covenant not to compete," and in 1985 he received a copy of Snap-on's 1985 "Field Employee Handbook," for which he signed a written receipt.
 
 
 7
 Sullivan argues that his was a just cause employment contract for two reasons. First, he contends that Snap-on's employment policies--as found in the 1985 handbook--required that Snap-on have just cause to discharge him. Secondly, he argues that even if the handbook failed to constitute a just cause agreement, there were oral representations of job security in return for satisfactory job performance which gave rise to a just cause employment contract between the parties.
 
 
 8
 At the outset, we note that the State of Virginia has a strong policy favoring at will employment. Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797, 800 (1985). An employee therefore must clear a substantial barrier to convert his at will employment contract to one terminable only for cause. Addison v. Amalgamated Clothing & Textile Workers Union, 236 Va. 233, 372 S.E.2d 403, 405 (1988); Miller v. SEVAMP, Inc., 234 Va. 462, 362 S.E.2d 915, 916-17 (1987). The Supreme Court of Virginia has refused to attribute a "just cause" requirement to an otherwise at will contract absent an express provision therefor. Addison, 372 S.E.2d at 405. And, "where no specific time is fixed for the duration of the employment, there is a rebuttable presumption that the hiring is terminable at will." SEVAMP, 362 S.E.2d at 917 (citations omitted).
 
 
 9
 The "Field Employee Handbook" issued by Snap-on to its employees in 1985 reflected Snap-on's employment policies. An employer's employment policies, generally speaking, are not inflexible--they remain subject to change at the will of the employer. Of course, an employer's employment policies may become part of a binding employment contract should the parties so intend. See Bradley v. Colonial Mental Health & Retardation Servs. Bd., 856 F.2d 703, 708 (4th Cir.1988).[1]
 
 
 10
 The relevant section of the 1985 handbook provides that: "At Snap-on we adhere to a philosophy of progressive discipline whenever possible. It consists of four steps: 1) verbal counseling or written warning; 2) written warning; 3) final written warning subject to dismissal; and 4) dismissal." (Emphasis added.) The handbook lists eighteen infractions which "will result in discipline ranging from verbal counseling up to and including immediate dismissal," although the actions listed are "not all-inclusive, but are [only] representative of unacceptable conduct for Snap-on Employees." At the conclusion of this list the manual states: "It is the policy of the Company that all jobs remain terminable at the will of the Company." (Emphasis added.)
 
 
 11
 The availability of suggested disciplinary procedures, when no limit is placed on an employer's discretion in their application, does not imply that an employer may discharge an employee only for just cause. See Bradley, 856 F.2d at 708 n. 11. Here, the handbook lists infractions which may subject an employee to discipline, but the list is not all inclusive. There is no description of the discipline that may be administered for a specific enumerated offense. More importantly, as the district judge noted, "Glaringly absent is any enumeration of the grounds for dismissal with cause and there is no mention of termination with cause." Sullivan v. Snap-on Tools Corp., No. 88-0443-R, slip op. at 7 (E.D.Va. March 8, 1989). Furthermore, these internal guidelines place no substantive limits on Snap-on's discretion--the handbook provides only that the steps will be followed "whenever possible." These provisions lack the specificity and "intricateness" of those contained in the manual referred to in Bradley.
 
 
 12
 The strongest indicator of the nature of the employment relation is found in the express at will language contained in Snap-on's 1985 handbook. As the Virginia Supreme Court noted in SEVAMP, 362 S.E.2d at 918, "[a] clearer expression of intent to create at-will employment can hardly be imagined," where an employee manual provides that an employee may be dismissed at the discretion of the employer.
 
 
 13
 Sullivan asserts that, even if the parties had no written just cause agreement, they still had an oral just cause employment contract. Sullivan was allegedly promised by his supervisors at Snap-on that he would have job security with the corporation for as long as he satisfactorily performed his duties. The district court found that "[t]hese oral assurances may have expressed Sullivan's and Snap-on's 'optimistic hope' ... that their future association [would] be profitable and long-standing." Sullivan v. Snap-on Tools Corp., slip op. at 3 (citation omitted). We are in agreement, and furthermore, we view the oral statements to Sullivan as reflecting the rational policy of Snap-on (presumably as with all employers) not to discharge employees who are satisfactorily discharging their duties. Oral assurances of job security predicated on satisfactory performance reflect the employer's present intent to continue an employment relationship, as opposed to its assumption of an obligation to do so. Such expressions are insufficient to rebut the strong Virginia presumption that employment is at will. Addison, supra.
 
 
 14
 Assuming arguendo, however, that the parties did have an oral just cause agreement, such contract would not be enforceable. This court has held that, under Virginia law, "enforcement of ... [an] alleged oral 'just-cause' contract is barred by the Statute of Frauds because it cannot be performed within a year." Windsor v. Aegis Servs. Ltd., 691 F.Supp. 956, 959, aff'd, 869 F.2d 796 (4th Cir.1989).[2]
 
 
 15
 In conclusion, the existence, per se, of employment policies, written or orally expressed, does not infer an intent that such policies become part of the employment contract. The language of Sullivan's written employment policy, as contained in the 1985 handbook, is insufficient to create an employment contract requiring just cause for termination. Rather, the language of the handbook reflects the flexibility of Snap-on's employment policy (a feature inconsistent with such policy's incorporation into the employment contract), and additionally was such as would put a reasonable employee on notice that he served at the corporation's will. The oral assurances of job security during satisfactory performance do not constitute an agreement to the contrary. And, assuming these oral assurances did create an oral just cause contract, this contract would be unenforceable under Virginia's statute of frauds. Accordingly, the ruling by the District Court that "Sullivan was, as a matter of law, an at will employee and Snap-on was free to terminate his employment without just cause," Sullivan v. Snap-on Tools Corp., slip op. at 8, is without error.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 In Bradley, 856 F.2d at 708, this court found that a personnel manual which intricately detailed "the offenses that may subject an employee to discipline" and described with particularity "the discipline that may be administered for the enumerated offenses," formed a contract which placed limits on the employer's discretion to discharge an employee without cause. The court reasoned that the right to be disciplined according to the terms of the manual conferred valuable benefits which placed substantive limits on the employer's right to discipline an employee and obligated an employer to discharge an employee only for cause
 
 
 [2]
 Sullivan relies on the recent Virginia case of Elliott v. Shore-Stop, Inc., --- Va. ----, 384 S.E.2d 752 (1989), to support his claim that an oral just cause contract exists in the instant case. Elliott is inapplicable to our case because it is a pleading-sufficiency decision holding only that the fact-specific oral contract as pleaded in that case did suffice by its terms to overcome Virginia's at will contract presumption. It does not hold, nor does it stand implicitly for the proposition that such an oral contract is enforceable against a properly raised statute of frauds defense. In this case, Snap-on has pleaded the statute of frauds and has relied on it in its summary judgment motion. Windsor thus controls and bars the enforcement of an oral just cause contract, if one exists at all