# CIRCUIT COURT OF THE CITY OF RICHMOND

Lisa Cauthorne et al.

v.

Herbert S. King, Sr., et al.

February 19, 1993

Case No. LU-3114-3

BY JUDGE T. J. MARKOW

This case is before the court on demurrer to Count II of the motion for judgment, motion to strike or reduce punitive damages, and motion to strike the jury demand.

This action stems from defendants' alleged discriminatory treatment of black applicants for housing and termination of employees for protesting that treatment. Defendants in this action are Herbert S. King, Sr., an individual with ownership interests in a number of apartment complexes in the Richmond area, King Properties, a corporation of which King is Director and President, and Kings Point Associates, a partnership in which King and/or King Properties are partners. Plaintiffs are Lisa Cauthorne and Patricia Noack, two individuals who were employed by King Properties, and Housing Opportunities Made Equal ("HOME"), a nonprofit corporation which counsels clients about residential opportunities and attempts to eliminate discriminatory housing practices in Richmond. Plaintiffs' allegations, taken as true for purposes of the demurrer, reveal the following facts.

Plaintiffs Cauthorne and Noack, during their employment with defendants, had responsibility for taking rental applications and discussing applicants with defendant King. The discriminatory practices King

allegedly engaged in include requiring Cauthorne and Noack to inform him of the race of applicants, making disparaging comments about black applicants, denying black applicants or requiring higher security deposits of them, steering black applicants from certain properties and limiting their access to others. Cauthorne and Noack complained to King about his practices, which resulted in King's swearing at them, engaging in other abusive behavior, demanding they not question him, and ultimately firing them.[1] Cauthorne and Noack have suffered damages as a result of their termination, and HOME has suffered damage to its organization as a result of King's practices. It is under this fact scenario that the court considers defendants' motions.

*Demurrer to Count II*

Defendants argue that plaintiffs' Count II, a claim for wrongful discharge, should be dismissed because plaintiffs have a remedy under the Fair Housing Law, and therefore there are no grounds for an exception to the at-will employment doctrine. The controlling case in this area is *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985), which involved a shareholder's right to vote free from duress or fear of reprisal. The plaintiff employees in that case worked for a bank and also held a number of shares of the bank's stock. Before a vote on a proposed merger, plaintiffs were told that if their shares were not voted in favor of the merger and the merger did not go through, their employment would be terminated, and that even if the merger did go through but their shares had been voted against it, their jobs would be adversely affected. *Id.* at 537. Plaintiffs voted in favor of the merger but later told the bank president that their proxies had been illegally obtained and were therefore void. *Id.* at 538. Plaintiffs were both terminated and sought recovery for wrongful discharge. Defendants asserted that plaintiffs were at-will employees and therefore had no cause of action for wrongful discharge; they argued that no statutory exceptions to the at-will employment doctrine applied and that any new ones had to be made by the General Assembly and not the court. *Id.* The court dis-

---

[1] There was some discussion at oral argument over the allegations that Cauthorne and Noack were fired "at least in part" because they protested King's practices. Defendants attached much significance to the implication that plaintiffs may have been fired for other reasons. However, for purposes of the demurrer the court construes the allegations in the light most favorable to the plaintiffs. Therefore, the court infers that plaintiffs were terminated because of their complaints to defendant King.

cussed exceptions to the at-will doctrine which came into play when employees were terminated in violation of established public policy. *Id.* at 539–540. The court noted that plaintiffs had been given a statutory right to vote without fear of reprisal, that this right was in furtherance of established public policy, and that the employment at-will doctrine would not protect defendants attempting to violate this right. *Id.*

In the case at bar, under the Fair Housing Law, plaintiffs can exercise their own rights and aid or encourage others to exercise their rights without threat or intimidation. *See* Va. Code Ann. § 36–96.5 (Michie Supp. 1992). Additionally, the Fair Housing Law provides both rights and remedies, allowing for complaints to the Real Estate Board as well as civil actions. *See* Va. Code Ann §§ 36–96.9 and 36–96.18 (Michie Supp. 1992). The public policy exception recognized in *Bowman* contemplated the absence of another remedy; in fact, the court posed the issue as "whether this employer can, *with absolute immunity*, discharge these employees in retaliation for the proper exercise of rights as stockholders." *Bowman*, 229 Va. at 539. The court characterized the public policy exception as narrow; it was needed in that case "[i]n order for the goal of the statute to be realized and the public policy fulfilled." *Id.* at 540.

In the present case, the statute has in place its own mechanisms, the complaints or civil actions mentioned above, to foster its goals and the public policy of fair housing practices. In *Pruitt v. Johnston Memorial Hospital, Inc.*, 21 Va. Cir. 188 (1990), the plaintiff had recourse under the Virginia Safety Act and was therefore denied a public policy exception to the at-will employment doctrine. In that case, as here, the plaintiff "obviously had a statutory remedy available to her," so the court was not required to supply another. *Id.* at 189. At oral argument, counsel for the plaintiffs herein asserted that if plaintiffs' evidence at trial fails to put them squarely within the language of the Fair Housing Law and the court had previously dismissed the wrongful discharge count, they would then be left without a remedy. This, it was argued, would be contrary to the broad public policy against discriminatory housing practices, and therefore the wrongful discharge count should stand. However, the rationale of *Bowman* ensures that plaintiffs have *a remedy;* it does not guarantee their recovery under that remedy. Plaintiffs must be afforded a mechanism to enforce their statutory rights; if that mechanism is not provided in the statute itself, the court may

fashion one, such as the public policy exception to the at-will employment doctrine. But if a statutory remedy is available, the court need not provide alternative remedies to protect the plaintiff who may not succeed under the statute. Plaintiffs in this case have a remedy under the Fair Housing Law, and seek that remedy in Count I of their motion for judgment. The court need not allow the wrongful discharge count to stand as a safety net in the event plaintiffs do not succeed on Count I. The Fair Housing Law embodies the public policy against housing discrimination upon which plaintiffs rely; it also provides the remedy to enforce that policy, which plaintiffs pursue in Count I. As such, there is no reason to call upon the narrow exception to the employment at-will doctrine allowing a wrongful discharge claim. Therefore, defendants' demurrer to Count II is sustained.

*Motion to strike or reduce punitive damages*

Defendants argue that plaintiffs' allegations are insufficient to support a claim of punitive damages or, in the alternative, that if the punitive claim is allowed to stand, it must be limited to the $350,000 cap set out in Virginia Code § 8.01–38.1. As to the sufficiency of plaintiffs' pleading, defendants assert that "a plaintiff must plead that a defendant's actions were prompted by ill will, malevolence, grudge, spite, wicked intention or a conscious disregard of the rights of another." *Peacock Buick, Inc. v. Durkin*, 221 Va. 1133, 1137 (1981). (Def. Memo. at 2.) Plaintiffs include in their motion for judgment specific actions by defendants toward black applicants for housing at their properties, such as making disparaging remarks, requiring increased security deposits, and limiting access to certain properties. Plaintiffs also include actions toward themselves when they complained about the above practices, such as swearing at them and other abusive behavior, demanding they not question the practices, and ultimately firing them. Plaintiffs also allege knowledge (of the illegal nature of the acts) and malice on the part of the defendants. Taken together, these claims are sufficient, at the pleading stage, to allege the "conscious disregard for the right of another" necessary for a punitive damage claim. The plaintiffs obviously have the burden of proving these allegations at trial, to a sufficiently egregious degree, to be entitled to an award. While expressing no opinion as to the possible outcome at trial, the court finds sufficiently specific factual allegations

in the pleadings to overrule defendants' motion to strike the punitive damage claim.

As to limiting the amount of punitive damages claimed, the court finds no reason to impose such a limit at this point. The statutory section involved provides that:

> the total amount *awarded for punitive damages against all defendants found to be liable* shall be determined by the trier of fact. In no event shall the total amount *awarded* for punitive damages exceed $350,000. The jury shall not be advised of the limitation prescribed by this section. However, *if a jury returns a verdict for punitive damages in excess of the maximum amount specified in this section, the judge shall reduce the award* and enter judgment for such damages in the maximum amount provided by this section.

Va. Code Ann. § 8.01–38.1 (Michie 1992) (emphasis added). The language of the statute dictates how much may ultimately be *awarded*, not how much may be *claimed.* If fact, the statute specifically contemplates an adjustment, if necessary, *after* an amount is determined by the trier of fact. Therefore, defendants' motion to reduce the punitive damage claim is overruled.

*Motion to strike the jury demand*

Defendants contend that since the Fair Housing Law does not expressly provide for trial by jury and the cause of action provided therein did not exist at the time the Virginia Constitution (which preserves the right to a jury trial) was enacted, plaintiffs' demand for a jury trial should be struck. Plaintiffs argue that this cause of action is most like a traditional tort action for damages, for which a right to trial by jury does exist; they urge this court to follow the interpretation of the analogous Federal Fair Housing Act and allow for a jury trial.

The language of the statute itself is most helpful to this inquiry. Generally speaking, it is possible to interpret the term "court" to include a jury, and unfortunately, the use of the word "court" is not totally consistent throughout the Virginia Code. However, in this instance, the use of the word "court" within the Fair Housing Law itself does not logically allow the term to include a jury. Section 36–96.18, the provision referring to civil actions and the relief available, makes several references to what "the court" may do. Subsection C provides that:

[i]n a civil action under Subsection A, if the *court* finds that a discriminatory housing practice has occurred or is about to occur, the *court* may award to the plaintiff, as the prevailing party, compensatory and punitive damages, reasonable attorney's fees and costs, and subject to subsection D, may grant as relief, any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such practice or order such affirmative action as may be appropriate.

Va. Code Ann. § 36–96.18(C) (Michie Supp. 1992) (emphasis added). Tracking the various parts of that sentence, the same word ("court") is used to refer to the entity that (1) finds whether a discriminatory practice has occurred, (2) awards damages, (3) grants injunctions and (4) orders other appropriate action. While the first two activities may be within the province of a jury, the second two definitely are not. A jury may never enter an injunction or order anything. Similarly, the section providing for civil actions by the Attorney General allows the "court" to grant the same types of relief as in § 36–96.18 (the section just discussed). It also states that:

[i]f monetary relief is sought for the benefit of an aggrieved person who does not intervene in the civil action, the *court* shall not award such relief if that aggrieved person has not complied with discovery orders entered by the *court* in the course of the action brought under this section.

Va. Code Ann. § 36–96.16(C) (Michie Supp. 1992) (emphasis added). As in the other section, a single sentence uses the word "court" to describe one thing a jury may do (make an award), and one thing a jury certainly may not do (enter discovery orders). That the legislature would assign different meanings to the same word used in the same sentence is patently illogical. It is unfortunate that the meaning attributed by the legislature to the word "court" in different chapters of the Code is not consistent. However, this court must interpret the meaning consistently at least within single sentences. As a result, defendants' motion to strike plaintiffs' claim for a jury trial is sustained.

While not raised by the defendants, the court notes that it has serious reservations about the standing of the plaintiff Housing Opportunities Made Equal and, if it has standing, whether it is misjoined in this action. If counsel wish to address these issues, the court will receive

any memoranda they may wish to file not later than March 8, 1993. After this date the court will act on the issue and does not wish to hear argument.