## CIRCUIT COURT OF ROCKINGHAM COUNTY

April L. Dray

v.

New Market Poultry
Products, Inc.

May 1, 1998

Case No. (Law) 11102

BY JUDGE JOHN J. MCGRATH, JR.

The issue before the Court on Defendant's Demurrer is the all-too-familiar question of whether the Plaintiff has stated a viable cause of action under the exception as articulated by the Supreme Court in *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985), and its progeny to the Commonwealth's long-established Employment At Will Doctrine. As with all Demurrers, all material facts stated in the Motion for Judgment are admitted, and facts which are implied or which may be fairly inferred from the facts expressly alleged are taken as admitted for the purposes of considering the Demurrer. *See, e.g., Duggin v. Adams*, 234 Va. 221 (1987).

### I. *Facts*

The Defendant, New Market Poultry Products, Inc. (hereinafter "New Market Poultry") is a corporation engaged in the processing of poultry products with a place of business at which this cause of action arose located in New Market, Shenandoah County, Virginia. At this location, New Market Poultry is involved in the processing of poultry for sale in interstate commerce and intrastate commerce.

The Plaintiff commenced her employment at New Market Poultry in August of 1994 and continued to work there until she was terminated on September 11, 1996. In the three months immediately preceding her termination, the Plaintiff worked as a quality control inspector at the New

Market facility. In this position, the Plaintiff inspected the production process in order to assure that no adulterated poultry products were distributed by the company. In the two-month period prior to her termination, the Plaintiff became increasingly frustrated with management's responses to her complaints about the lack of quality control on the production line. Because Plaintiff believed that management was ignoring her complaints and had failed to correct the quality control deficiencies, the Plaintiff informed the on-site governmental inspectors of certain alleged quality control deficiencies. This apparently lead the government inspectors to order the deficiencies corrected by New Market Poultry, resulting in a larger than usual amount of "condemned" product or product that needed to be reprocessed.

The Motion for Judgment further alleges that in the week preceding her termination on September 11, 1996, one of her supervisors had informed the Plaintiff through another employee that she would be fired if she ever again brought plant sanitary deficiencies to the attention of the on-site government inspectors. In the week immediately prior to her termination, the Plaintiff and other quality control inspectors labeled an increasing amount of poultry products that were being processed at the New Market facilities as sub-standard. On the day that the Plaintiff was terminated, the on-site government inspectors had required that New Market Poultry reprocess a fairly large quantity of poultry product due to contamination by adulterated ice.

The Motion for Judgment alleges that New Market's management believed that the Plaintiff had informed the on-site government inspectors of these deficiencies, which had led to the large amount of condemned product. The Plaintiff further alleges that because of this, she was terminated on September 11, 1996.

## II. *Legal Basis of Plaintiff's Claim*

Plaintiff asserts that the New Market Poultry facility is covered by the provisions of the Commonwealth of Virginia's Meat and Poultry Products Inspection Act (Virginia Code §§ 3.1-884.17 to 3.1-884.36). Plaintiff asserts that this broad regulatory scheme shows a commitment on behalf of the Commonwealth of Virginia that poultry products shall not be sold or distributed from facilities located within the state which are adulterated and/or which have not been inspected in accordance with provisions established by the Virginia Department of Agriculture and Consumer Services. It is Plaintiff's contention that this all-encompassing regulatory system prohibits in explicit and implicit terms any interference with the inspection process,

including the type of work that was being done by employees such as company inspectors or with the company inspectors' communications with federal or state inspectors.

In specific, the Plaintiff alleges that the public policy of the Commonwealth is set forth in § 3.1-884.19, § 3.1-884.22, and § 3.1-884.25 of the Virginia Meat and Poultry Products Inspection Act. Specifically, § 3.1-884.19 of the Code provides:

> It is the objective of this article to provide for meat and poultry products inspection programs that will impose and enforce requirements with respect to intrastate operations and commerce that are at least equal to those imposed and enforced under the Federal Meat Inspection Act and the Federal Poultry Products Inspection Act with respect to operations and transactions in interstate commerce; and the Commissioner is directed to administer this article so as to accomplish this purpose. The Virginia Department of Agriculture and Consumer Services is designated as the appropriate state agency to cooperate with the Secretary of Agriculture of the United States in administration of this article.

It is Plaintiff's contention that this manifestation of public policy is carried through in more specific terms by § 3.1-884.22(1)(b), which provides in pertinent part:

> No person shall with respect to any livestock or poultry or any livestock products or poultry products … .
>
> (b) Sell, transport, offer for sale or transportation, or receive for transportation, in intrastate commerce, any such articles which (1) are capable of use as human food, and (2) are adulterated or misbranded at the time of such sale, transportation, offer for sale or transportation, or receipt for transportation; or any articles required to be inspected under this article unless they have been so inspected and passed … .

Lastly, Plaintiff points to the provisions of the act which prohibit the interference with mandated inspections. This provision is found in § 3.1-884.25(2), which reads in pertinent part:

> Any person that forcibly assaults, resists, opposes, impedes, intimidates or interferes with any person engaged in or on account of the

performance of his official duties under this article with the intent to hinder, delay or prevent the performance of such duties shall be fined not more than $5,000 and/or be confined in a state correctional facility not less than one year nor more than three years, or be confined in jail not exceeding one year at the discretion of the jury or court trying the case without jury.

From this array of regulatory provisions, the Plaintiff concludes that it is the statutorily-created public policy of Virginia to assure that poultry products shall be processed free of adulteration and that the inspectors who are authorized by law to inspect the poultry products shall be permitted to carry out their duties free from any threat of retaliation and that company employees should be free from retaliation if they communicate their concerns with the purity of the product to state or federal inspectors. Plaintiff, therefore, concludes that her termination because she disobeyed a supervisor's order not to communicate directly with state poultry inspectors is in contravention of that public policy and that her firing is, therefore, an exception to the at-will employment doctrine which is encompassed within the holding of *Bowman v. State Bank of Keysville, supra*

### III. *Legal Analysis of Plaintiff's Claim*

With the exception of the *Bowman v. State Bank of Keysville, supra*, case itself, attempts in the Commonwealth of Virginia to state a wrongful termination claim on some statutory basis other than the Virginia Human Rights Act, have been nearly uniformly unsuccessful. For example, it has been held that a *Bowman* wrongful termination claim cannot be premised upon federal statutes (*see e.g., Lawrence Chrysler Plymouth Corp. v. Brooks,* 251 Va. 94 (1996)); a failure to follow State Board of Education regulations (*see Noland v. School Bd. of Culpeper County* (City of Charlottesville 1994) (Swett, J.)); appearing as a witness in a grievance procedure (*see, Miller v. SEVAMP, Inc.,* 234 Va. 462 (1987)); Virginia Board of Nursing Regulations (*see, Andrews v. Bon Secours-St. Mary's Hosp. of Richmond, Inc.,* 43 Va. Cir. 486 (City of Richmond 1997) (Markow, J.)); the Virginia Consumer Protection Act of 1977 (*Leverton v. Allied-Signal, Inc.,* 981 F. Supp. 486 (E.D. Va. 1998)).

The difficulty in articulating a *Bowman* type claim in a non-race, gender, or disability discrimination case has been the persistent difficulty of determining when a statute reaches the threshold level of announcing a

"public policy," which is definitive enough to serve as the basis of a wrongful termination claim and the difficulty of determining whether the plaintiff is in the class of individuals which are the intended beneficiaries of the articulated public policy.

This difficulty is prompted by the simple fact that virtually any statute enacted by the legislature has presumably been enacted if and only if there has been a determination of the legislature that: (1) the statute mandates an activity which is in the public interest and/or prohibits conduct which is against the public interest, and (2) the carrying out of the statutory mandate would benefit some or all of the citizens of the Commonwealth. In *Leverton v. Allied-Signal, Inc.*, 981 F. Supp. 486 (E.D. Va. 1998), Judge Payne summarized the difficulty in performing this analysis as follows:

> Of course, it cannot be gainsaid that: (1) all statutes, to some extent, must reflect policy considerations; and (2) unless a statute is thought to be in the public interest, it presumably will not be enacted. Hence, in a very general sense, all statutes reflect public policy. However, there appear to be only two circumstances in which the Supreme Court of Virginia has found that a statute may be the source of public policy in the sense that term is used in Virginia's tortious wrongful discharge jurisprudence.
>
> First, as in *Lockhart, Bailey,* and *Bradick,* the Court has permitted Bowman claims to proceed on the basis of statutes which, in their text, announce public policies. Second, on one occasion, the Supreme Court of Virginia has found a public policy in a statute which conferred rights on a certain group of people but which did not enunciate a policy. *See Bowman,* 331 S.E.2d at 801. Specifically, in *Bowman,* the public policy appears to have been implied in the right to vote shares of corporate stock. *See Id.* However, that is not entirely clear from the *Bowman* opinion. In a subsequent decision, the Court has commented that, in *Bowman,* the statute conferring the right to vote corporate shares (former Va. Code § 13.1-32, now Va. Code § 13.1-662) enunciated a public policy. See *Lawrence Chrysler,* 465 S.E.2d at 807. However, in *SEVAMP,* the Court described the policy in Bowman as "underlying" the statute which conferred the right to vote corporate stock. See *SEVAMP,* 362 S.E.2d at 917.
>
> Hence, unlike the policy-enunciating statutes in *Lockhart, Bailey,* and *Bradick,* it is difficult to place the statute in *Bowman* in a neatly defined category amenable to general extrapolation in analyzing state

law wrongful discharge claims. Nor, does Virginia's post-Bowman jurisprudence precisely define the kind of non-policy-enunciating statute which will supply the policy predicate for a *Bowman* claim because, since *Bowman*, the Supreme Court of Virginia has not sustained a tortious discharge claim based on that sort of statute.

It is possible even to argue that, today, a *Bowman* claim cannot survive without a policy-enunciating statute which expressly provides the policy requisite of the claim.

*Id.* (Footnotes omitted.)

It can be said that the Virginia Meat and Poultry Inspection Act has an implicit or even explicit declaration of a public policy of permitting only pure and unadulterated meats and well-inspected meats to be sold to the consumers in the Commonwealth of Virginia. However, it seems to be a stretch not supported by the case law to extrapolate from that general and broad declaration of the public good to a specific public policy which can be the basis of a *Bowman* type claim. It appears to this Court that the extension of the *Bowman* doctrine to permit a claim based on a regulatory scheme established by the legislature for the protection of the public health and safety and which has its own enforcement mechanisms would be contrary to the long-standing recognition in the Commonwealth of the Employment At Will Doctrine. As was stated by Judge Payne in the *Leverton v. Allied-Signal, Inc.* case, *supra*:

Many, if not most, statutes which regulate economic activity and commerce can be said, in a general way, to protect property interests. Some might even be said to secure personal freedom and general welfare interests in the economic sense of those terms. However, if statutes of that sort were sufficient to supply the public policy predicate for a *Bowman* claim, the limited exception, which for years the Supreme Court of Virginia has been at considerable pains to tightly restrict, soon would become so expansive as to be swallowed in its entirety.

Moreover, this Court believes that a significant additional reason as to why a *Bowman* claim cannot be premised upon the Virginia Meat and Poultry Inspection Act is the fact that the alleged conduct involved here was that certain threats were made to the inspectors or to persons reporting to inspectors which would prevent them from performing an adequate state or

federal inspection of the poultry being processed. However, the Virginia Meat and Poultry Inspection Act itself contains a specific criminal enforcement provision for a person who "impedes, intimidates or interferes with any person engaged in or on account of the performance of his official duties under this article." *See* § 3.1-884.25(2). Given that the legislature has provided specific criminal penalties for such conduct, it is logical to assume that if the legislature had intended for there to be a private civil enforcement mechanism to enforce the same provisions of the Act, that would have been set forth explicitly in the statute.

Therefore, this Court finds that even accepting as true all the facts which were pleaded in the Motion for Judgment and all reasonable inferences that may be based thereon, the Motion for Judgment does not state a cause of action cognizable in the Commonwealth under the *Bowman v. State Bank of Keysville, supra*, exceptions to the Employment at Will Doctrine. Therefore, the Court sustains the Demurrer and grants the Plaintiff twenty-one days to file an amended pleading if she chooses to do so.