## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Jones

v.

Professional Hospitality Resources, Inc.,
and Richard Lantz

February 24, 1995

Case No. CL94-2421

BY JUDGE JEROME B. FRIEDMAN

This matter is before the Court on Defendants' Demurrer and Motion for Summary Judgment. A hearing was held on December 30, 1994, at which time Counsel presented their respective arguments regarding the motions. The Court has since received a copy of the transcript from the hearing. After a careful consideration of the parties' briefs, the arguments submitted therein and at the hearing, and the law governing this case, the Court's opinion is set forth below.

The following is a brief summation of the facts of the case, most of which are undisputed and were admitted in the numerous requests for admissions propounded to the parties. Plaintiff began working for Defendant Professional Hospitality Resources, Inc. ("PHR") on March 30, 1994, as a night-shift housekeeper. Plaintiff's employment was for an indefinite period, as no agreement was made regarding how long she would be employed by PHR. Plaintiff has alleged that beginning on May 1, 1994, PHR's General Manager and Plaintiff's co-employee, Defendant Lantz, began touching her and calling her "Honey." Plaintiff expressed her concern at a meeting in late May, 1994, with Defendant Lantz and the Executive Housekeeper. Following the meeting, the touching and referrals to "Honey" stopped.

In early June, 1994, Plaintiff was reassigned to the day shift. Over the next two weeks, Plaintiff alleges she was given less desirable tasks and

reduced hours. Defendants assert that the reduction in hours was partly due to Plaintiff's request for days off and her refusal to work on days that she had not been originally scheduled to work but that had been offered to her. On June 15, 1994, Plaintiff resigned. The basis of her lawsuit against PHR and Lantz is that as a result of her expressing concern over Defendant Lantz's unwelcome touching, Defendants, in retaliation, made her working conditions undesirable and in effect constructively discharged her. Defendants filed a Demurrer followed by a Motion for Summary Judgment asserting that Plaintiff has failed to state a cause of action against them.

There are six issues that are presented by the three-count Motion for Judgment filed by the Plaintiff and that will be addressed by the Court. They are as follows.

(1) Does Virginia recognize the concept of constructive discharge?

(2) *Assuming arguendo* that the tort of wrongful discharge encompasses constructive discharge, do the facts establish that Plaintiff was constructively discharged?

(3) Can Defendant Lantz, a co-employee of Plaintiff, be held liable for Counts I through III of the Motion for Judgment?

(4) Has Plaintiff made a valid breach of contract claim against Defendant PHR?

(5) Has Plaintiff alleged a breach of an oral contract, and if so, is such claim barred by the Statute of Frauds?

(6) Are punitive damages appropriate in this case, i.e., is there proof of an independent willful tort beyond a mere breach of contract?

## I. *Constructive Discharge*

Virginia has long adhered to the common law doctrine of employment "at will" where when a term of employment cannot be determined from the contract, either party is at liberty to terminate the contract at any time for any reason, upon reasonable notice. *Lockhart v. Commonwealth Education Systems, Corp.*, 247 Va. 98, 102 (1994); *Progress Printing Co. v. Nichols*, 244 Va. 337, 340 (1992). However, this rule is not absolute. *Bowman v. State Bank of Keysville*, 229 Va. 534, 539 (1985). In 1985, Virginia joined a growing number of states that have carved out a narrow exception to the "at will" doctrine. *Id.* If an employee is discharged in violation of an established public policy, she may proceed with a tort action for wrongful discharge against her employer. *Id.* at 540.

*Bowman* involved two employee shareholders who were terminated by their employer for withholding a vote in favor of a proposed merger. *Id.* at 537. The Virginia Supreme Court held that the Plaintiffs' right to vote their shares free from duress and intimidation had been violated by the employer's threat to terminate them. *Id.* at 540.

The Court addressed the narrow exception again in *Miller v. SEVAMP*, 234 Va. 462, 467 (1987), where it emphasized that the tortious nature of the discharge derives from the employer's misuse of its freedom to terminate the services of its at-will employees. *Id.* The *Bowman* exception is limited to discharges which violate public policy, defined as the policy underlying existing laws "designed to protect the property rights, personal freedoms, health, safety, or welfare of the people." *Id.* at 468.

In 1994, the Court decided *Lockhart v. Commonwealth Education Systems, Corp.*, 247 Va. 98 (1994), and its companion case, *Wright v. Donnelly & Co.*, where the Plaintiffs alleged that they had been wrongfully discharged because of racial and sexual discrimination, respectfully. The Court held that the Plaintiffs had viable causes of action against their employers, as it is a public policy of the Commonwealth that "all individuals . . . are entitled to pursue employment free of discrimination based on race or gender." *Id.* at 105. The Court reiterated its adherence to the at-will doctrine but recognized that the narrow exception applies where an employee is *terminated* because of racial or sexual discrimination. *Id.* at 106 (emphasis added).

Each of the above-cited cases involves circumstances in which the employee was terminated by his or her employer. In no case did the employee resign and then pursue an action for wrongful discharge, as the Plaintiff in this case did. Even if the Plaintiff could present facts which establish a case of constructive discharge, no Virginia court has extended the tort of wrongful discharge in violation of public policy to include such a scenario.

The Court in *Miller* emphasized that the conduct which gives rise to the application of the narrow exception is misuse by the employer of his freedom to *terminate* the services of his employee. *Miller, supra*, 234 Va. at 467. When an employer abuses this right to terminate, a remedy is available to the employee. The policy underlying the rule does not contemplate the resignation of an employee followed by an action for wrongful discharge. The at-will employment relationship permits termination of services by the employer or the employee, for any reason. When the employee chooses to resign, no special rule applies. It is only when the

employer actually terminates the employee in violation of some established public policy that the narrow exception is applied.

Moreover, given that the exception is indeed a narrow one which the courts of Virginia have sparingly applied and that the notion of constructive discharge as a basis for the exception has not been recognized in Virginia, it is the opinion of this Court that the exception should not now be expanded. Defendants' Motion for Summary Judgment is therefore sustained on this issue.

Assuming *arguendo* that this Court were to determine that the tort of wrongful discharge in violation of public policy embraces constructive discharge, the facts of this case, supported by the parties' answers to numerous requests for admissions, do not establish that the Plaintiff was constructively discharged.

Federal courts in the Fourth Circuit have adopted a two-pronged test that must be satisfied in order to establish constructive discharge. A plaintiff must show both intolerable work conditions and a deliberate effort by the employer to force the employee to quit. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985); *Paroline v. Unisys Corp.*, 879 F.2d 100, 108 (4th Cir. 1989); *Green v. Fairfax County School Board*, 832 F. Supp. 1032, 1040 (E.D. Va. 1993).

Regarding the first prong, courts assess the intolerability of the working conditions by an objective standard of whether a "reasonable person" in the employee's position would feel compelled to resign. *Bristow, supra*, 770 F.2d at 1255. The law does not permit the subjective perceptions of the employee to govern a claim of constructive discharge. *Id.* It is the opinion of the Court that the facts of this case do not satisfy the first prong; therefore, Plaintiff cannot state a claim for constructive discharge.

The court in *Paroline* found the Plaintiff's working conditions to be intolerable where she was subjected to sexually suggestive remarks, kissing, and repeated touching of her body, despite her protests that such actions stop. *Paroline, supra*, 879 F.2d at 103. Under very similar facts, the Court in *Hukkanen v. International Union of Operating Engineers*, 3 F.3d 281 (8th Cir. 1993), reached a similar result.

Faced with less offensive facts, however, courts have found that a reasonable person would not feel compelled to resign. *See, e.g., Ugalde v. W. A. McKenzie Asphalt Co.*, 990 F.2d 239 (5th Cir. 1993) (court condemned action of employer in continuously subjecting employee to racial slurs, but conduct not so severe to rise to level of constructive discharge); *Bristow,*

*supra*, 770 F.2d at 1252 (general job dissatisfaction will not support a claim of constructive discharge).

The Plaintiff in this case has alleged that over a period of several weeks, Defendant Lantz referred to her as "Honey" and repeatedly touched her. Plaintiff concedes that there was no touching of her breasts or crotch area. There is no dispute that as soon as the Plaintiff expressed her concerns regarding Lantz's conduct, it stopped. Plaintiff further alleges that her hours were reduced and that her working conditions were made undesirable after she expressed her concerns. Plaintiff cites that she was placed on the day shift. She admits, however, that this switch in shift was not in itself objectionable. Regarding the reduction in hours, there is evidence in the record that demonstrates that the Plaintiff requested days off and that she declined an offer to work additional days for which she was not scheduled.

The Court finds that a reasonable person would not feel compelled to resign given Plaintiff's working conditions. It is important to note that Plaintiff resigned upon the advice of her attorney, suggesting that she may have otherwise continued to work. The court in *Paroline* warned of the potential abuse of employees who resign, then assert constructive discharge claims. *Paroline, supra.* 879 F.2d at 114. It follows that unless a Plaintiff presents facts demonstrating severe and pervasive conditions creating an intolerable work environment, a court should find that the first prong of the constructive discharge claim is not satisfied. Such conditions have not been demonstrated in this case. Because the first prong cannot be satisfied, the Court need not address the second prong of the test, and counsels' arguments regarding which federal circuit's version of that prong should be applied. Thus, even were this Court to recognize constructive discharge, summary judgment would be proper on this issue.

## II. *Liability of Defendant Lantz*

The Court sustains Defendants' Motion for Summary Judgment as to all counts of the Motion for Judgment against Richard Lantz. It has already been established that neither of the named Defendants should be liable for constructive discharge of the Plaintiff, as *Virginia's tort of wrongful discharge in violation of public policy does not encompass constructive discharge*. Assuming it did, Plaintiff has failed to state a claim for constructive discharge.

With regard to the contract count of the Motion for Judgment, Plaintiff has conceded that as a co-employee of Plaintiff, Defendant Lantz cannot be held individually liable for breach of contract, as he is not a party to the

contract. Liability for breach of contract, if any, would be appropriate as to Defendant PHR only. Accordingly, summary judgment is entered in favor of Defendant Lantz on all counts.

### III. *Breach of Contract Claim*

The parties agree that the Plaintiff and Defendant PHR had an at-will employment relationship. Pursuant to the at-will doctrine, either party could terminate the relationship at any time for any reason. Count II of Plaintiff's Motion for Judgment alleges that Defendant PHR breached the parties' contract of employment when it constructively discharged her.

Before 1985, it was the law of Virginia that employment which is terminable at will provides a dismissed employee *no basis for recovery of damages* against the former employer. *Sea-Land Services, Inc. v. O'Neal*, 224 Va. 343 (1982) (*cited in Mason v. Richmond Motor Co., Inc.*, 625 F. Supp. 883, 889 (E.D. Va. 1986) (emphasis added)). As set out above, a narrow exception was carved from this premise by the *Bowman* case creating an action for wrongful discharge in violation of public policy. No other exceptions to the established at-will doctrine have been recognized. Thus, there is no action for breach of contract against the former employer. Moreover, a finding by this Court that there is no cause of action in Virginia for constructive discharge precludes the Plaintiff from asserting a breach of contract claim on this ground.

Regarding implied statutory terms that Plaintiff alleges are part of every contract in Virginia, Plaintiff has offered the Court no authority for this premise. The *Mason* court rejected the notion that an employment contract contained an implied covenant of fair dealing, stating that no Virginia court had recognized such a claim. *Mason, supra,* 625 F. Supp. at 889. Once again, a finding by the Court that Defendant did not discharge Plaintiff would preclude Plaintiff's assertion that Defendant violated the statutory law of the state alleged to be an implied term of her contract. Plaintiff's argument is that her employer violated the Human Rights Act when it discharged her.

Finally, it is not necessary that the Court address the possibility of an oral contract between the parties. First, Plaintiff has alleged no facts that would establish that an oral agreement was made. Secondly, Plaintiff has stated in her Memorandum and by counsel at the hearing that the terms of such an agreement would be implied from the statutory law of Virginia. The Court rejects the premise by the Plaintiff that the statutory law of Virginia becomes impliedly a part of every contract, and accordingly, both

contract theories should be dismissed. Because the Court does not accept such premise and therefore rejects that Plaintiff has made a valid oral contract claim, the Court need not address the Statute of Frauds issue. Accordingly, Summary Judgment is entered in favor of Defendant PHR on Count II of the Motion for Judgment.

### IV. *Willful Independent Tort Claim*

In order for a court to award punitive damages for breach of contract, there must be proof of an independent willful tort. *Kamlar v. Haley*, 224 Va. 699 (1983). As the Court has ruled that there has been no breach of contract in this case, the Court can dispense with any discussion of the issue of punitive damages. Defendants are awarded summary judgment on this issue as well.

In conclusion, based on the above, the Court sustains Defendants' Motion for Summary Judgment on every count, and the Plaintiff's Motion for Judgment is hereby dismissed with prejudice.