## CIRCUIT COURT OF THE CITY OF ROANOKE

Summer M. Dowdy

v.

Jeff Bower,
individually and t/a
American Lenders
Service Co. of Roanoke

December 18, 1995

Case No. CL95-534

BY JUDGE RICHARD C. PATTISALL

Plaintiff, Summer M. Dowdy, has filed a Motion for Judgment against Defendants, Jeff Bower, individually and t/a American Lenders Service Company of Roanoke, on May 4, 1995, seeking damages from Defendants resulting from Defendant's alleged harassment and sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, as amended, the Virginia Human Rights Act, Va. Code §§ 2.1-714 through 2.1-725 (1950) as amended, and Virginia common law as set forth by *Lockhart v. Commonwealth Education Systems Corp.*, 247 Va. 98, 443 S.E.2d 428 (1994).

Defendants filed a demurrer to Plaintiff's Motion for Judgment stating that Plaintiff failed to state a cause of action upon which judgment can be awarded on the following grounds.

1. Plaintiff fails to state a cause of action under Title VII in that Defendants are not "employers" as defined by § 701(b) of Title VII.

2. Plaintiff fails to state a cause of action under the Virginia Human Rights Act, Va. Code §§ 2.1-714 through 2.1-725 as amended, in that nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions.

3. Plaintiff fails to state a cause of action in that she fails to allege that she was wrongfully discharged in violation of Virginia's public policy.

4. Plaintiff fails to state a cause of action for constructive discharge under Virginia law.

5. Plaintiff fails to state a cause of action under *Lockhart* in that Virginia's tort of wrongful discharge in violation of public policy does not encompass constructive discharge.

A demurrer admits the truth of all material facts that are properly pleaded. Under this rule, the facts admitted are: "(1) facts expressly alleged, (2) facts which are by fair intendment impliedly alleged, and (3) facts which may be fairly and justly inferred from the facts alleged." *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

The Court, in keeping with the above-established rule, finds for the purpose of ruling on the demurrer that during the time period complained of, Jeff Bower, individually, and t/a American Lenders Service Company of Roanoke, was Plaintiff's immediate supervisor; Plaintiff was subjected to obnoxious and offensive sexual behavior by Bower and other agents and employees of American Lenders Service of Roanoke; Defendant, Bower, asked Plaintiff to make a photocopy of her breasts and frequently talked to Plaintiff about the size of his penis; Bower purposely displayed explicit pornographic materials to Plaintiff and stored them in her desk; Bower offered Plaintiff a raise in salary if she would provide sexual favors to him, complaining that his wife would never give him sex; Bower encouraged Plaintiff to try sexual intercourse with two persons and also told Plaintiff she should try sex with another woman; Bower described his sexual activity to Plaintiff in substantial detail and often asked Plaintiff about her sexual activity; Jerry Bower, father of Defendant, Jeff Bower, once placed a pornographic homosexual magazine in Plaintiff's desk with a note addressed to her on a page with a photograph of a nude man with an erect penis, which note said, "Summer, this is for you;" Plaintiff complained to Defendant, Bower, that she did not like the manner in which she was treated by the men in the office but was told by Bower not to worry, that they had treated the previous secretary the same way; Defendants, Bower and American Lenders Service of Roanoke, had actual and/or constructive notice of the actions of Bower and other agents or employees of Defendants and made no effort or took any action to remedy the abusive and harassive working environment surrounding Plaintiff; the acts of Bower and others were intentional, based on sex, unwelcome by Plaintiff, and were sufficiently severe to constitute sexual harassment in an abusive

and intolerable working environment; that because of the heretofore described acts of Defendants and others, Plaintiff ended her employment with Defendants in January, 1995.

I. Does the Virginia Human Rights Act, Virginia Code §§ 2.1-714 through 2.1-725, as amended, nullify any previous cause of action Plaintiff may have had to recover judgment against Defendants under the facts pleaded?

The Virginia Supreme Court in *Lockhart v. Commonwealth Education Systems*, 247 Va. 98 (1994), stated:

> The General Assembly has declared this Commonwealth's strong public policy against employment discrimination based upon race or gender. Code § 2.1-715, which is a part of the Virginia Human Rights Act, states in part:
>
> It is the policy of the Commonwealth of Virginia:
>
> 1. To safeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, age, marital status or disability, in places of public accommodation, including education institutions and in real estate transactions; in employment; to preserve the public safety, health and general welfare; and to further the interests, rights, and privileges of individuals within the Commonwealth.
>
> We recognize that the Virginia Human Rights Act does not create any new causes of action. Code § 2.1-725. Here, we do not rely upon the Virginia Human Rights Act to create new causes of action. Rather, we rely solely on the narrow exception that we recognized in 1985 in *Bowman*, decided two years before the enactment of the Virginia Human Rights Act.
>
> Without question, it is the public policy of the Commonwealth that all individuals within this Commonwealth are entitled to pursue employment free of discrimination based on race or gender. Indeed, racial or gender discrimination practiced in the work place is not only an invidious violation of the rights of the individual, but such discrimination also affects the property rights, personal freedoms, and welfare of the people in general.

The General Assembly of Virginia amended § 2.1-725 Code of Virginia 1950, effective July 1, 1995, and Defendants argue that this amendment nullifies *Lockhart, supra*. This Court finds that the Motion for Judgment filed here by Plaintiff pre-dates the statutory amendments, and the substan-

tive law at the time the Motion for Judgment was filed is controlling. The statute as amended conferred no cause of action for Plaintiff to bring suit upon, nor did it remove any cause of action Plaintiff may have had prior to its effective date.

II. Under the facts pleaded, does Plaintiff have a cause of action against Defendants under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*?

Plaintiff has brought this action against Bower, individually, and t/a American Lenders Service of Roanoke, alleging that Defendant, Bower, was her immediate supervisor, apparently because she does not have knowledge at this time as to the exact legal status of her former employer, i.e., a sole proprietor, a one-person corporation, or an integrated enterprise, and attempts to hold Bower liable either as an individual, sole proprietor employer, or to hold another legal entity liable through Bower under the doctrine of respondant superior.

The Court cannot find, at this time, as a matter of law that Plaintiff has no cause of action under Title VII.

III. Under the facts pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts, does Plaintiff state a cause of action against Defendants for unlawful discrimination on the basis of gender under the public policy provisions of the Commonwealth as applied in *Lockhart, supra*?

The Virginia Supreme Court in *Bowman v. State Bank of Keysville, supra*, has ruled that it is a violation of the public policy of Virginia that a stockholder is discharged from her employment by the management of the Corporation because she voted her shares against the position taken by management.

The Court in *Lockhart, supra*, has said:

> Here, however, we are concerned with rights of even greater importance, the personal freedom to pursue employment free of discrimination based upon gender or race. Indeed, there are few, if any, greater restrictions on personal freedoms that an employee can suffer than to be terminated because of discrimination based on race or gender.

Plaintiff's loss of her employment gives rise to a cause of action under the public policy exception to Virginia's employment at will doctrine, not because she has a vested right to continued employment by Defendants,

but because Defendants have abused their rights and authority by intentionally discriminating against Plaintiff on the basis of gender.

IV. Defendants argue also that Virginia law does not recognize the doctrine of constructive termination, an issue raised here which appears to be one of first impression. The Court subscribes to the reasoning of Federal cases decided in this jurisdiction involving this issue.

The United States Circuit Court of Appeals, Fourth Circuit, has held a constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job. This doctrine was set forth in *Bristow v. Daily Press, Inc.*, 770 F.2d 1251 *cert. denied*, 475 U.S. 1082 (1986). The Court held that a Plaintiff alleging constructive discharge must therefore prove two elements: deliberateness of the employer's action and intolerability of working conditions, and that when an employer fails to correct intolerable working conditions, then the trier of fact may infer that the employer intended to force the employee to resign.

Remedial action taken or not taken by an employer once it received notice of sexual harassment from its employee is evidence of the employer's intent. *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989), *affirmed in part and reversed in part*, 900 F.2d 27 (4th Cir. 1990) (en banc).

The case at bar for the purpose of ruling on the demurrer admits that not only did Plaintiff's immediate supervisor, Bower, sexually harass Plaintiff against her wishes, but that he was made aware by Plaintiff's complaints that other males in the office were making unwelcome sexually harassing comments to Plaintiff, and instead of taking any action to stop these male employees or agents from further harassing Plaintiff, he simply told Plaintiff "not to worry that they had treated the previous secretary the same way."

It has long been recognized in the law of the Commonwealth in domestic matters that a dutiful, loyal, caring spouse is not required to remain in a hostile, demeaning, oppressive environment created by an abusive, harassive, cruel spouse under intolerable and inexcusable conditions. The spouse who is forced to leave the marital domicile cannot, under these circumstances, be held to have deserted the marital domicile and the spouse who remains in said domicile. Our law recognizes the doctrine of constructive desertion on the part of the spouse whose outrageous and unacceptable conduct forced the other spouse to leave and provides the

aggrieved spouse a remedy against the spouse who perpetrated the wrongful act.

Must then a faithful, dutiful, competent, and loyal employee suffer embarrassment, humiliation, indignation, and harassment from an employer until the employer no longer receives any measure of gratification from the sexual harassment of the employee and thus discharges the employee before the employee has a cause of action for wrongful discharge?

The Court thinks not.

If Plaintiff can prove what she has alleged, it is the clear and unequivocal public policy of this Commonwealth that no person should have to suffer such indignities nor be subjected to such rude and reprehensible conduct in the employment place.

Therefore, the demurrer of Defendants is overruled.