## CIRCUIT COURT OF FAIRFAX COUNTY

Christina Johnson

    v.

Faiz Behsudi et al.

January 16, 1997

Case No. (Law) 150929

BY JUDGE STANLEY P. KLEIN

This case is before the Court on a demurrer by both defendants to all six remaining counts of the Motion for Judgment[1]: Count I (Sexual Harassment), Count II (Sexual Battery), Count III (Sexual Assault), Count V (Wrongful Constructive Discharge), Count VI (Intentional Infliction of Emotional Distress), and Count VII (Respondeat Superior). Defendants also demur to the claim for punitive damages. After consideration of the parties' oral arguments, written memoranda, and the authorities cited therein, the Court sustains the demurrer to Counts I and VI and overrules it as to Counts II, III, V, and VII, and the prayer for punitive damages for the reasons set forth below.

---

[1] Defendants demurred to all counts except Count IV, a medical malpractice claim, which has since been nonsuited by Plaintiff.

## I. *Background*

Plaintiff Christina Johnson alleges that she was a patient of Defendant Dr. Faiz Behsudi as well as an employee of Behsudi and his medical practice, Faiz Behsudi, M.D. and Associates, P.C., d/b/a Emergency U.S.A. ("Emergency U.S.A."). Johnson was hired in January of 1995 and resigned on March 23, 1995, due to the alleged continuous sexual comments and conduct of Dr. Behsudi towards her.

Plaintiff further alleges that on March 20, 1995, Dr. Behsudi induced her to ingest an extraordinarily large amount of the drug Alprazolam which rendered her unconscious. Defendant Behsudi then allegedly put Johnson in his van so he could drive her home. During the next hour and a half, Plaintiff claims Dr. Behsudi engaged in offensive and sexual touching without Plaintiff's consent. It is alleged that Defendant Behsudi intended to engage in sexual intercourse with Johnson at her home.

## II. *Demurrer Standard*

A demurrer tests the sufficiency of the allegations set forth in a motion for judgment to determine if they adequately give notice of a claim cognizable under Virginia law. The merits of a case are not reviewable at a demurrer stage. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277 (1993). When considering a demurrer, the material facts well pleaded are taken as true in addition to facts impliedly alleged and those that can reasonably be inferred from the facts alleged. *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717 (1988).

## III. *Count I: Sexual Harassment*

In this count, Plaintiff seeks relief on the basis that she was continually subjected to "sexually suggestive and derogatory comments, and improper physical sexual conduct by Defendant Behsudi," as a condition of her employment. Defendants Behsudi and Emergency U.S.A. demur to this claim on the ground that no independent cause of action exists for sexual harassment under either the common law or the Virginia Human Rights Act, Va. Code §§ 2.1-714 *et seq.*

In her memorandum, Plaintiff relies on the case of *Dowdy v. Bower*, 37 Va. Cir. 432 (1995), from the Circuit Court of Roanoke to support her contention that Virginia recognizes a tort of sexual harassment. Plaintiff's reliance on *Dowdy v. Bower* is misplaced. Contrary to Johnson's argument,

Judge Pattisall did not recognize a separate cause of action for sexual harassment. He merely ruled that the sexual harassment the employee had been subjected to gave rise to viable claims of gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and wrongful constructive discharge under Virginia common law. *Id.*

Johnson also asserts that Virginia Code § 2.1-716, comprising part of the Virginia Human Rights Act, provides the basis for a claim of sexual harassment under Virginia law. That code section declares that conduct which violates any Virginia or federal statute governing discrimination, based upon, *inter alia*, sex, shall be "an unlawful discriminatory practice . . . ." Johnson's argument ignores the effect of Virginia Code § 2.1-725, wherein the Virginia General Assembly explicitly stated its intention that no provision of the Virginia Human Rights Act "create[s], nor shall it be construed to create, an independent or private cause of action to enforce its provisions."[2] *Id.*; see also *Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. 98, 105, 439 S.E.2d 328 (1994).

A number of potential causes of action arising from sexual harassment in the workplace already exist under Virginia and federal law (e.g. Title VII, assault and battery, wrongful discharge). This Court declines to recognize a separate tort of sexual harassment under Virginia common law. Establishment of any such cause of action more appropriately lies within the discretion of the General Assembly. Accordingly, the demurrer to Count I is sustained and that count is dismissed.

### IV. *Counts II and III: Sexual Assault and Sexual Battery*

Defendants demur to Counts II and III claiming that Johnson had no actual knowledge of any tortious physical contact and could not have apprehended unwanted physical contact, as she was unconscious at the time that Dr. Behsudi allegedly touched her.

A battery is any touching of another done in an angry, rude, or insolent manner. *Crosswhite v. Barnes*, 139 Va. 471, 124 S.E. 242 (1924). An assault can be either (1) an attempted battery, or (2) putting another person in reasonable fear of receiving bodily harm. *Merritt v. Commonwealth*, 164 Va. 653, 658, 180 S.E. 395 (1935); *Park Oil Co. v. Parham*, 1 Va. App. 166, 170, 336 S.E.2d 531 (1985). An assault can occur even if the victim is unaware of the event as long as the requisite intent exists. *Park Oil Co.*, 1 Va. App. at

---

[2] The Court will address the applicability of the 1995 amendments to the Virginia Human Rights Act below.

170. Johnson alleges in her Motion for Judgment both that Dr. Behsudi touched her and that he attempted to touch her in preparation for sexual intercourse. Motion for Judgment, pp. 26, 33. Therefore, sufficient claims for both battery and assault are set out in the Motion for Judgment, and the demurrer to these counts is overruled.

## V. *Count V: Wrongful Constructive Discharge*

Plaintiff claims that Dr. Behsudi's inappropriate sexual comments and constant touching compelled her to quit her job. Defendants respond that relief can only be sought for wrongful discharge when an employee has been fired. In this instance, Johnson voluntarily terminated her employment, and therefore, according to Defendants, she can seek no relief, because no cause of action exists under Virginia law for constructive discharge. Defendants further assert that sexual harassment does not constitute gender discrimination under the Virginia Human Rights Act, and therefore, Count V does not state a viable claim for wrongful discharge, even if the Court were to extend the cause of action to encompass constructive discharge.

The employment at-will doctrine is firmly established in Virginia law. *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 465 S.E.2d 806 (1996); *Miller v. SEVAMP*, 234 Va. 462, 468, 362 S.E.2d 915 (1987). However, this doctrine is not absolute. In *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985), the Virginia Supreme Court established an exception to this doctrine when an employee's discharge would violate an established Virginia public policy. In *Bowman*, certain shareholders of a corporation were fired for challenging a merger of that corporation. The merger was ratified by the shareholders only after they were threatened with discharge if they did not execute proxies in favor of it. Reasoning that former Virginia Code § 13.1-32 (now § 13.1-662) granted these shareholders the right to vote their shares as they deemed appropriate, the Court held that the discharges were in violation of Virginia public policy and created a cause of action in tort for wrongful discharge. *Id.* at 540.

This exception to the employment at-will doctrine also formed the basis for the Court's decision in *Lockhart v. Commonwealth Educ. Sys.*, 247 Va. 98, 439 S.E.2d 328 (1994). In *Lockhart*, plaintiff Lawanda Lockhart alleged that she had been demoted and then discharged because of her opposition to Commonwealth College's racially discriminatory practices. The trial court sustained a demurrer to her claim of wrongful discharge. Relying on its decision in *Bowman* and language from its opinion in *SEVAMP*, the Supreme Court reversed. The Court held that the discharge violated the public policy

set out in Virginia Code § 2.1-715, that all persons be free of discrimination based on either race or gender. *Id.* at 105.

Most recently, on January 10, 1997, a majority of the Supreme Court proclaimed the ongoing vitality of the *Lockhart* doctrine, when it ruled that the Virginia Human Rights Act precluded the firing of a woman based upon her pregnancy. *Bailey v. Scott-Gallaher, Inc.*, 253 Va. 121, 480 S.E.2d 502 (1997). In dissent, three members of the Court unsuccessfully argued that the word "pregnancy" did not appear in the Virginia Human Rights Act, and that any extension of the word "sex" in Virginia Code § 2.1-715, to include pregnancy, was properly within the province of the General Assembly, not the judiciary.

This Court finds the decision in *Bailey* controlling as to the defendants' argument that sexual harassment does not violate the Virginia Human Rights Act. It cannot be seriously questioned that Dr. Behsudi's alleged conduct against Johnson was based upon her sex. As such, if proven, it would contravene Virginia public policy, as set out in a Virginia statute, and would fall squarely within one of the limited exceptions to the employment at-will doctrine.

The Virginia Supreme Court has yet to address the issue of whether an employment discharge can be constructively accomplished. However, the Court has recognized other causes of action premised upon "constructive" conduct. For example, notwithstanding Virginia's strong public policy favoring the continuation of marriages, the Court has created a doctrine of constructive desertion, which recognizes a ground for divorce in favor of a party, even though the guilty party did not actually desert the marriage. *Brooks v. Brooks*, 200 Va. 530, 106 S.E.2d 611 (1959); *Williams v. Williams*, 188 Va. 543, 50 S.E.2d 277 (1948). Moreover, the Supreme Court has judicially crafted constructive evictions of tenants, *Cavalier Square Ltd. Partnership v. Virginia A.B.C. Bd.*, 246 Va. 227, 231, 435 S.E.2d 392 (1993), and constructive fraud, *Mortarino v. Consultant Eng'g Services, Inc.*, 251 Va. 289, 295, 467 S.E.2d 778 (1996); *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387 (1994).

The United States Court of Appeals, however, has recognized constructive discharge in the workplace.[3] In *Bristow v. The Daily Press, Inc.*, 770 F.2d

---

[3] Virginia Circuit Court judges have reached different conclusions on this issue. Compare *Jones v. Professional Hospitality Resources, Inc.*, 35 Va. Cir. 458 (1995), and *Wright v. Donnelly*, 28 Va. Cir. 185 (1992) (holding that Virginia does not recognize the tort of wrongful constructive discharge), with *Dowdy v. Bower*, 37 Va. Cir. 432 (1995), and *Molina v. Summer Consultants, Inc.*, Law No. 152715

1251 (4th Cir. 1985), the Fourth Circuit held that "a constructive discharge occurs when 'an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job'." *Id.* at 1255 (citations omitted). In order to satisfy the Fourth Circuit test, a plaintiff must allege and prove two elements to establish a constructive discharge: (1) the deliberateness of the employer's action; and (2) the intolerableness of the working conditions. *Bristow*, 770 F.2d at 1255. Under this test, deliberateness only exists if the employer intended to force the employee to quit. Intolerableness of working conditions is reached only when a reasonable person "in the employee's position would have felt compelled to resign." *Id.* (citations omitted).

When the countervailing policies and authorities are fully considered, this Court finds that wrongful constructive discharge in the workplace should be recognized under Virginia law. This tort is somewhat akin to the tort of intentional infliction of emotional distress in that there is no clear definition of the conduct proscribed. See *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160 (1991). As such, the cause of action should not be favored and its elements should be "aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145 (1974). The mere tendering of a resignation should not be allowed to circumvent Virginia's strong adherence to the employment at-will doctrine. Accordingly, in order to sustain a cause of action for wrongful constructive discharge, this Court holds that a plaintiff must allege and prove by clear and convincing evidence (1) that the resignation was occasioned by conduct "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Russo v. White*, 241 Va. at 27; *Ruth v. Fletcher*, 237 Va. 366, 368, 377 S.E.2d 412 (1989); and (2) that the conduct resulting in the resignation violated a Virginia public policy embodied in an existing statute. See *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 465 S.E.2d 806 (1996). If proven at trial, the allegations of the Motion for Judgment herein, could, in the minds of reasonable jurors, satisfy this test.[4]

---

(Fairfax County Cir. Ct. Dec. 9, 1996) (holding that Virginia does recognize the tort of wrongful constructive discharge).

[4] Defendants also argue that the 1995 legislative amendments to the Virginia Human Rights Act preclude recovery under Count V. The Court need not decide the substantive merits of that argument. As the cause of action set out in Count V clearly accrued prior to July 1, 1995, the effective date of those amendments, they are inapplicable to the claims set out in this count. See *Starnes v. Cayouette*, 244

Finally, Defendant Behsudi also demurs to Count V on the basis that he was not Plaintiff's employer and therefore, could not have wrongfully discharged her. Dr. Behsudi contends that Emergency U.S.A. employed Johnson. In the Motion for Judgment, Plaintiff in fact alleges that she was employed by Dr. Behsudi and/or Emergency U.S.A. Motion for Judgment, p. 3. Therefore, at this demurrer stage, the Court need not decide whether a supervisor, in addition to the actual employer, can be liable for wrongful discharge under Virginia law. Consequently, the demurrer to Count V is overruled.

### VI. Count VI: Intentional Infliction of Emotional Distress

The Supreme Court of Virginia requires that four elements be shown to establish IIED: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable; (3) that the wrongdoer's conduct caused the emotional distress; and (4) that the emotional distress was severe. *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145 (1974).

Defendants demurred to the IIED claim on two grounds, the second and fourth prongs of the *Womack* test. First, they claimed that the alleged conduct was not sufficiently outrageous and, second, the alleged emotional distress was not sufficiently severe. Although the Court has concluded above that the allegations of conduct by Dr. Behsudi were adequately outrageous to withstand scrutiny at a demurrer stage, the Court sustains the demurrer on the ground that the distress alleged does not meet the test set out in *Russo v. White*, 241 Va. 23, 400 S.E.2d 160 (1991).

In the Motion for Judgment, Johnson claims that she "incurred severe emotional distress resulting in physical symptoms and injury . . . ." Motion for Judgment, p. 60. In order to state a cause of action for IIED, the ensuing emotional distress must be "so severe that no reasonable person could be expected to endure it." *Id.* at 28. In *Russo*, the plaintiff claimed that "she was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work." *Id.* The Virginia Supreme Court concluded that these effects were not sufficiently severe to establish IIED. In dicta, the Court indicated that a stress-induced physical injury, seeking medical attention, confinement, or loss of wages might establish the requisite emotional distress. *Id.* Johnson's allegation of "physical symptoms and injury" is even less specific and severe than the

Va. 202, 419 S.E.2d 669 (1992); *Shiflet v. Eller*, 228 Va. 115, 120, 319 S.E.2d 750 (1984).

allegations in *Russo*. Accordingly, the Court sustains the demurrer to Count VI, because Plaintiff has failed to allege sufficient emotional distress.

## VII. *Count VII: Respondeat Superior*

Because Dr. Behsudi was an employee of Defendant Emergency U.S.A. during all relevant times, Plaintiff contends that Emergency U.S.A. is liable for Dr. Behsudi's tortious acts under the doctrine of respondeat superior. Emergency U.S.A. demurs on the basis that Plaintiff has failed to allege that Dr. Behsudi's actions were within the scope of his employment and, therefore, vicarious liability cannot attach.

Liability attaches to an employer for his employee's tortious acts when the acts are "within the scope of the duties of employment and in the execution of the service for which he was engaged." *Commercial Business Sys. v. BellSouth Serv.*, 249 Va. 39, 45, 453 S.E.2d 261 (1995) (quoting *Tri-State Coach Corp. v. Walsh*, 188 Va. 299, 305-6, 49 S.E.2d 363 (1948)).

> The test of the liability of the master for the tortious act of the servant, is not whether *the tortious act itself* is a transaction within the ordinary course of the business of the master, or within the scope of the servant's authority, but whether *the service itself, in which the tortious act was done*, was within the ordinary course of such business or within the scope of such authority.

*BellSouth Serv.*, 249 Va. at 44 (emphasis in original).

> Additionally, "when an employer-employee relationship has been established, 'the burden is on the [employer] to prove that the [employee] was not acting within the scope of his employment when he committed the act complained of, and . . . if the evidence leaves the question in doubt it becomes an issue to be determined by the jury'."

*Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 235, 476 S.E.2d 172 (1996) (quoting *Kensington Assoc. v. West*, 234 Va. 430, 432-33, 362 S.E.2d 900, 901 (1987) (quoting *Broaddus v. Standard Drug Co.*, 211 Va. 645, 653-54, 179 S.E.2d 497, 504 (1971))). An employer can still be liable even if the employee's motive was personal or wrongful. *Commercial Business Sys.*, 249 Va. at 45-6.

The Virginia Supreme Court recently held that a psychologist who had sexual intercourse with his patient may have been acting within the scope of

his employment. *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 237, 476 S.E.2d 172 (1996). The Court based its ruling on the plaintiff's allegations that the doctor committed the tort while providing counseling and therapy which he was hired to give. *Id.* Similarly, Johnson has sufficiently alleged that Dr. Behsudi was acting as an employee and an agent of Emergency U.S.A. when he allegedly harassed and assaulted her. Motion for Judgment, p. 4. Moreover, Plaintiff has affirmatively alleged that Behsudi was acting within the scope of his employment as a physician when he prescribed Alprazolam for the plaintiff the night of the alleged sexual assault and battery. Motion for Judgment, p. 19. These allegations are sufficient to withstand scrutiny at this preliminary stage of this lawsuit. The demurrer to Count VII is therefore overruled.

## VIII. *Effect of the Virginia Workers' Compensation Act*

Defendants also assert that injuries, such as those alleged by the plaintiff, when caused by intentional torts committed by an employer or fellow employee in the workplace, are exclusively compensable under § 65.2-307 of the Virginia Workers' Compensation Act, Va. Code §§ 65.2-100, *et seq.* This argument ignores the Virginia Supreme Court's decision in *Middlekauff v. Allstate Ins.*, 247 Va. 150, 439 S.E.2d 394 (1994), as well as the unambiguous language of Virginia Code § 65.2-301(B).

In *Middlekauff*, the Court rejected the argument that Code § 65.2-307 precluded an employee from bringing suit against a fellow employee for intentional infliction of emotional distress. The plaintiff's injuries there, as alleged here, were gradually incurred over a period of time and therefore were not "injuries by accident" within the meaning of the statutory scheme. *Id.* at 153. Consequently, they were not the type of injuries compensable within the purview of the Virginia Workers' Compensation Act, and a separate cause of action, outside of the Act, did in fact lie. Moreover, Virginia Code § 65.2-301(B) specifically authorizes a victim of a sexual assault in the workplace to bring a claim for damages against the assailant. Defendants' demurrer on this ground is without merit.

## IX. *Punitive Damages*

Finally, Defendants demur to Plaintiff's prayer for punitive damages on the basis that no facts are alleged which could give rise to such damages. In addition, Defendants contend that Virginia's procedures for awarding punitive damages violate the constitutions of both Virginia and the United States.

Considering all the facts explicitly alleged as well as those reasonably implied and inferred therefrom, this Court concludes that Johnson's allegations adequately state a claim for punitive damages. According to Plaintiff, Dr. Behsudi prescribed her a large dose of Alprazolam for the sole purpose of rendering her unconscious so he could sexually assault her. With respect to the sexual harassment, it allegedly continued for at least two months despite Johnson's objections to Dr. Behsudi himself and the office manager. These allegations are sufficient to satisfy the pleading requirements at a demurrer stage. As to the propriety of Virginia's procedures concerning the award of punitive damages, this issue, if necessary, can be addressed at trial through appropriate legal rulings and jury instructions.

The order entered in accordance with these rulings indicates that Defendants' demurrer is sustained only with respect to Counts I and VI for the reasons articulated above. Leave has previously been granted to allow Johnson to amend only Count VI, the IIED claim. An Amended Motion for Judgment was timely filed on January 9, 1997.

This Court makes no ruling concerning the sufficiency of the allegations of emotional distress set out in the Amended Motion for Judgment.