## CIRCUIT COURT OF FAIRFAX COUNTY

Patrick F. Barron

v.

NetVersant--Northern
Virginia, Inc.

July 14, 2005

Case No. (Law) 223161

BY JUDGE RANDY I. BELLOWS

The matter comes before the Court to resolve one essential issue: Was Patrick Barron terminated without cause from his employment with NetVersant-Northern Virginia, Inc. ("NetVersant")? If so, the contract entered into by the parties provide certain remedies. *See* Paragraph 4(a)(iv) of the Employment Agreement, Plaintiff's Exhibit 2. If not, Mr. Barron is only entitled to the relief referenced in Paragraph 4(a)(iii).

For the reasons stated below, the Court finds that Mr. Barron was terminated without cause and, pursuant to Paragraph 4(a)(iv) of the Agreement, awards damages in the amount of $150,129.84.

### I. Background Facts

Most of the pertinent facts are not in dispute. On October 30, 2000, the parties entered into a written employment agreement. Section 4 of the Agreement provides that the Agreement is renewable for additional periods of one year, unless either party provides the required thirty days notice of intention not to automatically renew the Agreement. The Agreement automatically renewed for an additional one year on October 30, 2002. Paragraph 4(a)(iii) of the Agreement provides a remedy should the employee be terminated for cause. Paragraph 4(a)(iv) of the Agreement contains a remedy should the employee be terminated without

cause, including one year's salary and a lump sum payment equal to twelve months of health insurance premiums. On January 1, 2003, the parties orally agreed to reduce Mr. Barron's base salary from $135,000.00 to $122,800.00. On February 28, 2003, NetVersant indicated that it intended to reduce Mr. Barron's salary again to $90,000.00. NetVersant also indicated that it intended to modify the terms of Section 2(b)(iv) of the Agreement and Annex 1. Mr. Barron was told that, if he declined to sign a new modification agreement reducing his salary to $90,000.00 and modifying the other provisions of the Agreement, he would not be entitled to any commissions on sales. The Agreement also modified Mr. Barron's job title. Mr. Barron refused to agree to the modifications and left his employment of NetVersant.

## II. Prior Court Proceedings

The instant suit was filed May 20, 2004. The Motion for Judgment alleged three counts: (1) Breach of Agreement – Base Salary; (2) Breach of Agreement – Health Insurance Premiums; and (3) Breach of Agreement – Commissions. Another suit was previously filed on April 22, 2003 (*Patrick F. Barron v. NetVersant-Northern Virginia, Inc.*, Chancery No. 183726), in which Mr. Barron requested Declaratory Judgment: (1) that the Employment Agreement was not executed by NetVersant and delivered to Mr. Barron and, thus, is not binding upon either of the parties; or (2) that modification of Mr. Barron's compensation plan in contravention of the Employment Agreement constitutes constructive termination without cause; and (3) that the restrictive covenant contained in the Employment Agreement is impermissibly broad in scope, vague and unenforceable as a matter of law; and (4) that the restrictive covenant contained in the Employment Agreement is unenforceable as a matter of law during any renewal term; or (5) that the restrictive covenant contained in the Employment Agreement is for a period of one year by virtue of termination without cause as a result of NetVersant's unilateral modification of Barron's employment duties, compensation, and benefits.

The filing of these two lawsuits on related matters resulted in NetVersant filing a plea in bar based on an assertion of improper claim splitting. On September 3, 2004, the Honorable Jane M. Roush overruled NetVersant's plea in bar. NetVersant now seeks reconsideration of Judge Roush's decision. This Court declines to reconsider Judge Roush's ruling.

On January 22, 2005, in the Declaratory Judgment case, the Honorable Dennis J. Smith ruled that Declaratory Judgment should be

granted and that the Restrictive Covenant in the Employment Contract was unenforceable by virtue of the breach of the Agreement by NetVersant.

### III. Instant Proceedings

#### A. Preliminary Issue Regarding Judge Smith's Decision

The case came before the Court on April 25, 2005, for trial on the fundamental issue of whether Mr. Barron was terminated without cause. However, an initial question before the Court was whether Judge Smith's order implicitly or necessarily included a finding of termination without cause. Mr. Barron's argument can be summarized as follows. Judge Smith could not have decided that the breach of contract was sufficiently serious to render unenforceable the restrictive covenant without necessarily deciding that the breach was material. NetVersant does not contest that a material breach of the contract by the defendant would constitute termination without cause of Mr. Barron; however, NetVersant contends that Judge Smith neither necessarily nor implicitly found a material breach. After hearing extensive argument on the matter, the Court found that Judge Smith's decision did not necessarily or implicitly involve a finding of material breach. Thus, the matter was properly before this Court as a matter of first impression in this litigation.

#### B. Summary of Testimony

William Newlin, who founded Telstar Communications in 1987, which was later sold to NetVersant, testified as to the Agreement. Newlin worked as Barron's boss for the two and a half years after the acquisition. Newlin's testimony supports the fact that the Agreement provides that Barron receive a salary and a commission structure based on 1% of gross sales and that Barron was never paid commissions for the sales that were attributable to him between January 1, 2003, and April 11, 2003, which was the date of termination.

Newlin also testified that, under NetVersant's modification of the Agreement, Barron's salary would be reduced to $90,000.00; that he would be demoted from director of sales to a sales manager; and that Barron did not agree to this modification.

Next, Mr. Barron was called to the stand and testified that he did not receive commissions on top of his base salary for the period of January 1, 2003, to April 11, 2003. Barron testified that the commission he was due

was one percent of two and a half to three million, which represents the sales for the time period at issue. Mr. Barron was told that NetVersant was not going to pay "any commissions based on any previous Employment Agreements except for '02 bookings." Mr. Barron also testified that he was told that commissions would not be payable unless he accepted the modifications. The modifications offered to Mr. Barron reduced his base salary to $80,000.00 or $90,000.00.

Mr. Barron testified that he left his job at NetVersant because he was not willing to take what he considered to be a reduction in base pay and commissions. Mr. Barron also testified that he previously agreed to a modification of his salary to $122,800. However, he said that, while he was paid this amount in salary until the day he left NetVersant, he was not paid commissions for the first quarter of 2003.

William Feidler, general counsel and corporate secretary for NetVersant, was called as a witness on behalf of NetVersant. Mr. Feidler testified that, at no time after Mr. Barron agreed to the reduction to $122,800.00, was his base salary not paid. Mr. Feidler further testified that Mr. Barron never submitted to him anything that suggested what commissions he might be owed based on 2002 or 2003 sales.

Mr. Feidler also testified as to the proposed compensation plans. Under the account executive compensation plan (the alternative to the sales manager plan that was offered to Mr. Barron), Mr. Barron would have a base salary of $90,000.00 and be compensated based on the gross operating profit that is generated during the plan year. Mr. Feidler explained that the more profitable in aggregate all of the jobs were, the higher rate of commission that Mr. Barron would receive. Mr. Feidler testified that Mr. Barron could possibly receive a "considerable amount of money."

Mr. Feidler testified that, under the sales manager compensation plan, Mr. Barron would be working in an at-will employment situation, as opposed to the Agreement that he was currently operating under where his employment contract was automatically subject to renewal on a year-to-year basis.

### C. Post Trial Briefs

### 1. Mr. Barron's Post-Trial Briefs

Mr. Barron argues that the restrictive covenant could not have been determined to be unenforceable had the breach of contract found by Judge

Smith not been material. He argues that the breach had to have been material if it was sufficient to cause the court to rule the restrictive covenant unenforceable. Mr. Barron further states that the actions taken by NetVersant constitute a termination without cause and therefore falls under paragraph 4(a)(iv) of the Agreement. Paragraph 4(a)(iv) of the Agreement says that an employee terminated without cause is entitled to "receive from the Company the monthly base salary, at the monthly base salary rate then in effect, for twelve (12) months following such termination. . . ." and a "lump sum payment in an amount equal to (A) the amount of the monthly premium payment to continue coverage for Employee and Employee's eligible dependents under the Company's health insurance plans under the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), multiplied by (B) twelve (12)."

Mr. Barron asserts that changes in an employee's job duties and a reduction in compensation constitute material changes to the conditions of employment. Mr. Barron's responsibilities and benefits were also modified, which he says also constituted a material breach of the Agreement.

Since NetVersant reduced Mr. Barron's compensation and sought to demote him from a sales manager to an account executive, reducing his job responsibility and authority, Mr. Barron takes the position that he was terminated without cause.

The base salary in the Agreement is $135,000.00. Mr. Barron argues that he is entitled to $135,000.00 together with the agreed upon COBRA sum of $15,129.84. He also asserts that he is entitled to $15,000.00 in unpaid commissions.

## 2. NetVersant's Post-Trial Brief

NetVersant's argument is that *res judicata* now applies. They contend that, since Mr. Barron asked the Court in the first suit for a determination that there was a breach of contract constituting a termination without cause and that the Court did not make a determination on this issue, *res judicata* applies and Mr. Barron is now precluded from raising this issue.

NetVersant also cites *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142 (2001), for its proposition that a material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract. NetVersant

argues that Mr. Barron failed to prove that NetVersant's modification of Barron's pay structure and job title constituted such a fundamental failure to perform its obligations. Their principal argument is that the change in pay structure did not necessarily mean a reduction in overall pay or that he would not have received the substantial benefit of his original bargain. NetVersant argues that it is possible that the amount of money Mr. Barron would have earned under the modified agreements would have been substantially more than what he would have earned under the old agreement. Therefore, NetVersant says that there was no material breach of contract and no termination without cause.

*IV. Analysis*

The fundamental question is whether Barron was terminated without cause. A material breach of contract by NetVersant regarding Mr. Barron's compensation and job responsibilities would constitute termination without cause. Although this case is not pleaded as a constructive discharge claim, it is helpful to look at the law of constructive discharge.[1] "To establish constructive discharge, a plaintiff must show that the termination was in violation of clear and unequivocal public policy of this Commonwealth that no person should have to suffer such indignities and that the employer's actions were deliberate and created intolerable working conditions." *Padilla v. Silver Diner*, 63 Va. Cir. 50, 57 (Virginia Beach, 2003). "The circuit courts have pretty much been evenly split on the question of whether a constructive discharge claim can be used in a wrongful termination case in the Commonwealth of Virginia." *Gochenour v. Beasley*, 47 Va. Cir. 218, 221 (Rockingham County, 1998). The Honorable Randall G. Johnson said in *Peyton v. United Southern Aluminum Products, Inc.*, 49 Va. Cir. 187 (City of Richmond, 1999), that constructive discharge is a viable cause of action in Virginia. The Honorable Stanley P. Klein in *Johnson v. Behsudi*, 52 Va. Cir. 533, 538 (Fairfax, 1997), also held that wrongful constructive discharge in the workplace should be recognized under Virginia law. However, *Jones v. Professional Hospitality Resources*, 35 Va. Cir. 458 (Virginia Beach, 1995), held that constructive discharge was not a viable doctrine in a wrongful termination case.

---

[1] Defendant's brief states: "Accordingly, Your Honor has appropriately fashioned the question: Did the employer so materially alter its contract with Mr. Barron so as to justify him in declaring a 'constructive discharge'." (Defendant's Brief at 7-8.)

In the instant case, the Agreement entered into by NetVersant and Mr. Barron was fundamentally, materially, and unilaterally altered by NetVersant, in four respects. First, compensation is a vital part of an employment agreement. Since Mr. Barron's salary was substantially reduced by NetVersant, the breach was serious enough to rise to the level of a material breach on behalf of NetVersant. Second, the Court agrees with Mr. Barron that NetVersant's unilateral modification of the contract, changing Mr. Barron's employment status from one for a definite term of one year, renewable annually, to that of an employee at will, was a material breach of the Agreement. A breach that is made by turning a guaranteed contract into an at-will contract is material. Third, Mr. Barron's responsibilities in his capacity at NetVersant were modified. Mr. Barron was reduced from his position as Director of Sales to a sales manager. Fourth, NetVersant breached the Agreement by refusing to let him participate in the company's commission sales plan (unless he signed a modified contract). NetVersant's reducing Mr. Barron's salary, changing the employment renewal status, reducing his capacity at the company, and modifying his commission compensation benefits all constitute a material breach of the Agreement. The Court finds that NetVersant's failure to adhere to the agreed-upon terms of the Agreement defeats the essential purpose of the contract.

Having found that NetVersant materially breached the contract and, therefore, that NetVersant effectively terminated Mr. Barron's employment without cause, the Court now turns to the issue of damages and finds that Paragraph 4(a)(iv) of the Agreement is applicable. There are three elements of damages.

First, there is one year of unpaid salary. The parties disagree as to whether that is the contract set salary of $135,000.00 or the orally modified salary of $122,800.00. Mr. Barron asserts that he accepted $122,800.00 as a base salary, without a written modification, for an undetermined period of time. Paragraph nine of the Agreement says in pertinent part: "This written Agreement may not be modified except by a further writing signed by a duly authorized officer of the Company and Employee, and no term of this Agreement may be waived except in writing signed by the party waiving the benefit of such term." Thus, the contract itself required that the modification of salary be in writing. It was not and, therefore, the Court finds that Mr. Barron is entitled to what is set forth in the contract, to wit, $135,000.00.

Second, Mr. Barron is entitled to a lump sum payment in an amount equal to the amount of the monthly premium payment to continue

coverage for his and his eligible dependents under the Company's health insurance plans under the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), multiplied by twelve, for a total of $15,129.84.

Third, the Court finds that the evidence presented is insufficient to make a finding that Mr. Barron is entitled to unpaid commission. Under the Agreement, Mr. Barron would not have been paid any commission on bookings alone. He would only have been paid on jobs in which payment was received. Since Mr. Barron was unable to offer evidence of any jobs for which payment was received in the first quarter of 2003, the Court does not award Mr. Barron unpaid commissions.

The Court finds that Mr. Barron was terminated without cause and awards damages in the amount of $150,129.84.